IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO.: 4:21-CV-00149

| | | |
|---|---|---|
| JANE DOE, JILL DOE, by her parents and next friends, JOHN DOE and wife, SALLY DOE, and JANE ROE, | : : : : | |
| Plaintiffs, | : | **COMPLAINT** |
| vs. | : | **(Jury Trial Demanded)** |
| CAPE FEAR ACADEMY, INC., | : : | |
| Defendant. | : : | |

Plaintiffs, complaining of the Defendant, alleges and says:

## THE PARTIES

1.     The Plaintiff Jane Doe at all times herein mentioned was a citizen and resident of New Hanover County, North Carolina, and a Senior at Cape Fear Academy, Inc. ("CFA") during the 2020-21 academic year.

2.     The Plaintiff Jill Doe, Jane Doe's sister, is a 16-year-old female who resides with her parents, John Doe and wife, Sally Doe, and at all times herein mentioned was a student at CFA and at the time of the unlawful action taken by CFA, was a rising junior at CFA for the 2021-22 academic year.  Jill is suing CFA through her next friends and parents, John Doe and wife, Sally Doe, who are both citizens and residents of New Hanover County, North Carolina.

3.     The Plaintiff Jane Roe at all times herein mentioned was citizen and resident of New Hanover County, North Carolina, and a Senior at CFA during the 2020-21 academic year.

4.     The Defendant, Cape Fear Academy, Inc., is upon information and belief, a non-profit corporation organized and existing under the laws of the State of North Carolina with its principal place of business located in New Hanover County, North Carolina.

## JURISDICTION AND VENUE

5.     This matter is properly before this Court because it involves issues of federal questions relating to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 anti-discrimination laws and their application.  For privacy purposes, the Plaintiffs will be referred to as "Jane Doe", "Jill Doe", "John Doe and wife, Sally Doe", and "Jane Roe".

6.     This Court has federal question jurisdiction, as well as supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1331 because: (a) the Plaintiffs' primary claims are federal questions; and (b) the state law claims are closely related thereto, thereby forming the same "case or controversy", under Article III of the United States Constitution.

7.     This Court has personal jurisdiction over the parties hereto because all either reside or conduct business primary in New Hanover County, North Carolina.

8.     Venue properly lies in the Southern District of the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1391, because all or a substantial part of the events or omissions giving rise to this action occurred in this District, specifically, in Wilmington, New Hanover County, North Carolina.

## FACTUAL ALLEGATIONS

9.     CFA is a private, non-denominational school (K-12) located in Wilmington, North Carolina, with a Lower School, Middle School and Upper School, who, at all times material to the allegations contained herein for the 2020-21 academic year, was a recipient of Federal financial assistance, namely, a "PPP" loan from the SBA in the amount of $1,253,949 in April, 2020.

10.     At all times herein mentioned, during the 2020-21 academic year, Jane Doe and Jane Roe were Seniors at CFA, and Jill Doe was a sophomore.

11.     Prior to the 2020-21 academic year, Jane Doe, who had attended CFA since her 9th grade year, had suffered from a number of medical issues, and had been the victim of bullying and harassment by various male students at CFA. During the 2020-21 academic year, Jane actively sought therapy for both anxiety and depression related to the bullying and harassment to which she was being subjected by various male students at CFA.

12.     Jane Roe had attended CFA since Pre-K through 9th grade, and returned to CFA for her Senior year, the 2020-21 academic year, after attending boarding school for several years. However, during her sophomore year at the other school she attended, Jane Roe was sexually assaulted, and by the time she returned to CFA for her Senior Year, Jane Roe had been diagnosed with and was suffering from "Post Traumatic Stress Disorder" ("PTSD") associated with her sexual assault.

13.     Jill Doe, Jane's sister, had attended CFA since Middle School, and, like both Jane Doe and Jane Roe, is an incredibly bright, high-achieving high school student that chose to attend CFA to help prepare her for college, believing that CFA

offered her a more significant academic challenge than any other public or private high schools located in New Hanover County, North Carolina. By June 2021, Jill Doe had developed a tight circle of trusted friends and faculty members at CFA, and was on her way to achieving great things, both academically and socially, at CFA, and but for the unlawful actions of CFA, would have done so.

14. CFA's Upper School Student Handbook (herein, the "CFA Handbook) contains various "Bullying, Harassment, and Hazing Policies", and provides that "Cape Fear Academy is dedicated to fostering an environment that promotes kindness, acceptance and embraces differences among individuals. Therefore, CFA will not tolerate any type of bullying, harassment or hazing." The Policies separately define "bullying" and "harassment" (to include "sexual harassment"). The Policies provide "types of bullying", including "verbal bullying", "social bullying," sometimes referred to as "relational bullying," and "Cyber bullying." The Policies provide "Examples of Bullying Behavior" and "Examples of Harassment Behavior."

15. The Policies provide "[w]hat a student should do if s/he feels bullied, harassed or hazed," which includes, *inter alia*, "[l]ook at the person bullying you and tell him or her to stop in a calm, clear voice;" "[p]romptly talk to an adult you trust. Don't keep your feelings inside. Telling someone can help you feel less alone. The adult, especially an adult you trust at school, can help you make a plan to stop the bullying." These Policies encourage students to "stand up for others", to "talk to a parent, teacher or another adult you trust. "Adults need to know when bad things happen so they can help." Those Policies further provide that "[n]ot saying anything

could make it worse. The student who is bullying will think it is ok to keep treating others that way." As it pertains to the bullying and sex-based conduct to which Jane Doe and Jane Roe and other female students at CFA were subjected, CFA would simply ignore these Policies.

16. The Policies provide "[w]hat parents should do if they think their child may be being bullied, harassed or hazed", and includes "[t]alk to the school counselor, CFA teacher, and/or Division Director right away. We CAN help." The Policies provide that "[t]hose who know about bullying and do not report it are unintentionally sending messages that adults don't know how to help or that it isn't important." As it pertains to the Policies' provision regarding talking to a school counselor, a CFA teacher, and the promise "We CAN help", CFA would ultimately ignore those Policies, *intentionally* sending Jane Doe (against whom CFA retaliated for doing the very thing that its Policies promote), Jane Roe (who CFA simply ignored) and Jill Doe (who was not part of any efforts by her sister Jane, Jane Roe or other female and male students, described below) the message that "adults don't care", and worse, that if a CFA student dared to complain and speak out about being the victim of bullying and harassment, it would be the victims that would face consequences.

17. The Policies also contain a provision on "reporting" concerns relating to bullying, harassment, or hazing, which provides in pertinent part:

> All concerns relating to bullying, harassment, or hazing should be reported immediately to school officials. We also expect that anyone, whether students, faculty, staff or family member who witnesses, or has knowledge of an incident of bullying, harassment, or hazing, will report the incident to administration immediately. When the school administration becomes aware of bullying, harassment, or hazing, the

situation will be promptly investigated. Any student found to have violated this policy will be subject to disciplinary action, up to and including dismissal from school for serious violations. No adverse action will be taken against any person who makes a good faith report of bullying, harassment or, hazing. Retaliation in any form against anyone for making a good faith complaint under this policy or for participating in an investigation is strictly prohibited . . . .

CFA is committed to investigating all instances of reported harassment and bullying. If reports are confirmed, consequences will be given to the perpetrator so that the victim is protected and safe. CFA faculty and staff will work carefully with students who have been victims of bullying and harassment so they are emotionally supported. Perpetrators will receive disciplinary consequences up to dismissal and depending on the offense may be given a limited chance to change behaviors and receive counseling and support to do so.

18.     In the case of Jane Doe, CFA simply ignored its Policies and retaliated against Jane Doe by refusing to let her attend "Salute to Seniors" and CFA's commencement exercise unless she provided a written apology to male students, to whom she owed no apology, and telling her that "someone must take the fall," for simply speaking out and complaining (with the full knowledge and consent of CFA's Counselor and a member of CFA's faculty) about the inappropriate conduct, including sex-based harassment and bullying, to which Jane Doe, Jane Roe and other female students at CFA had been subjected by certain male students at CFA.

19.     Prior to, and during, the 2020-21 Academic Year, both Jane Doe and Jane Roe experienced "bullying" and "sexual harassment" as those terms are defined under CFA's policies.

20.     Jane Doe experienced "bullying" and "sexual harassment" from certain other male students at CFA, including her former boyfriend, who she dated and broke up with in the 10th grade. Specifically, Jane Doe experienced teasing; name-calling;

inappropriate sexual comments; rumors being spread; embarrassing comments and conduct towards her by other male students in public; and "social" bullying and taunting. This conduct by these certain male students was widespread and pervasive.

21.     Jane Roe was placed in an AP Literature and Composition class, in which there were nine (9) male students, including the male student Jane Doe dated and broke up with in the 10th grade.

22.     Both during and outside of their AP Literature and Composition class, certain male students engaged in "bullying" and "sexual harassment" towards Jane Roe.  Specifically, Jane Roe experienced teasing; inappropriate sexual comments; taunting; "social" bullying; embarrassing comments and conduct towards her by these certain male students; as well as off-color jokes.

23.     These certain male students, in discussing various literature assignments, would openly engage in class in misogynistic behavior towards female characters, including laughter and jokes when literature or movies depicted physical and/or sexual violence towards women.

24.     Given her own experiences, the conduct and demeanor of these certain male students caused Jane Roe incredible anxiety, and she brought her concerns to the attention of her teacher and CFA's Counselor, Tobi Ragon (herein, "Ms. Ragon"), who encouraged Jane Roe and other female students to come to her if they were experiencing any problems in any of their classes.  However, when Jane Roe informed Ms. Ragon about the conduct of the male students in her AP Literature class, instead of addressing the male students' conduct, Ms. Ragon made comments like "that sucks,

but that's the way the real world is," or "Cape Fear is actually a lot better with this stuff (addressing misogyny) than the schools around us" and "I'm sure your old school wasn't perfect."

25.     Jane Roe began to harbor a deep-rooted feeling of worthlessness, believing CFA, nor anyone at CFA, would ever address her concerns about the conduct of those certain male students.

26.     Jane Roe's counselor/therapist requested that CFA allow Jane Roe certain accommodations to deal with her recurring episodes of anxiety, which by then had escalated to almost daily panic attacks.

27.     Jane Roe struggled to maintain her course load while meeting the expectations of completing college entry requirements for performing art, concerns which CFA was well aware, as those concerns were brought to the attention of Jane Roe's teacher and Ms. Ragon.

28.     Despite CFA being aware of these concerns, nothing was done to admonish these male students or to otherwise cause them to cease their inappropriate conduct in class.

29.     A proposed solution for Jane Roe, and the recurring teasing, inappropriate sexual comments, and conduct directed towards her by male students in her class, was Jane Roe being assigned different materials, than those assigned to the rest of the class, for her to read on her own, and to be absent from this class for approximately two (2) weeks, as a result of the conduct she had been subjected to by certain male students.

30.    So, once again, rather than dealing with the inappropriate conduct of the male students, Jane Roe, as a female, was forced to work alone and review other materials than those being reviewed by the rest of her class.

31.    The last unit for the 2020-21 academic year in Jane Roe's AP Literature class was a series of short stories, one of which details the stalking, manipulation, kidnapping and eventual rape and murder of a 15-year-old girl.

32.    Jane Roe's AP Literature teacher informed her that, despite Jane Roe being a victim of sexual assault, she believed it important that Jane Roe read the story and participate in a discussion of the story in class.   That topic, however, only further emboldened certain male students in the class, including one particular student who allegedly sexually assaulted another CFA female student, a friend of both Jane Doe and Jane Roe, with this male student making comments to the effect of "women getting raped and murdered, what's wrong with that . . . tale as old as time," and other completely inappropriate jokes, which met with thunderous laughter from other male students in the class.

33.    This resulted in Jane Roe experiencing symptoms consistent with a panic attack, and she confronted these male students in class about their completely inappropriate behavior, and then she left the classroom, followed by her teacher, who recommended that Jane Roe speak with Ms. Ragon.

34.    Jane Roe went to see Ms. Ragon and once again informed her about how hard it was for her to even get up each morning to come to school, knowing that she would be forced to continue to interact with certain male students who already, by

that time, created an incredibly hostile environment for Jane Roe and other female students at CFA and prevented them from enjoying the educational experience to which they were entitled, free of this pervasive and hostile conduct by male students.

35.     Throughout the Winter and Spring of 2021, Jane Roe continued therapy for her anxiety and depression, which she suffered as a result of the bullying and sexually harassing behavior towards her by male students at CFA.

36.      In or around this time period, Jane Doe and other female (and some male) students at CFA learned that Jane Roe was being bullied and harassed by some of the same male students that had bullied and harassed each of them.

37.     As a result, these female students, including Jane Doe and Jane Roe, gained the courage to speak out about what had been happening to them.

38.     Accordingly, a group of female students at CFA, including Jane Doe and Jane Roe, went to Mr. Fee and Ms. Ragon and complained to them about the sexual-related harassment they had been subjected, and about other racially insensitive and derogatory conduct from certain male CFA students.

39.     Each of these female students, including Jane Doe and Jane Roe, had extensive conversations with CFA's counselor about these issues and both Jane Doe and Jane Roe were assured that CFA would undertake an investigation into these male students' conduct, and that per the Policies, appropriate action would be taken against these male students so as to ensure that this conduct ceased.

40.     These students were each requested to document their concerns and to send all the "evidence" they had to support it, and that the Dean of Students would then meet with these female students to discuss the issues.

41.     CFA's graduation was scheduled for May 24, 2021, and in early May, Administrators at CFA chose certain students to speak at graduation, including some of the same male students that had sexually harassed and bullied both Jane Doe and Jane Roe and other female students at CFA, and that had also made racially derogatory and insensitive comments to other students and on their social media pages.

42.     That decision instantly caused controversy among some CFA students, including Jane Doe, Jane Roe, and approximately fifteen (15) other girls who were members of the Senior Class, who were all quite vocal in their criticism of CFA and the male students who were chosen to speak at graduation, believing that CFA's action would only reward these male students' completely inappropriate conduct.

43.     In or around the first week in May 2021, CFA's counselor, Ms. Ragon, and CFA's Dean of Students, Jamison Fee (herein, "CFA's Dean of Students," or "Mr. Fee"), met with the complaining male and female students, and these students laid out in graphic detail the sexually harassing, bullying and completely inappropriate conduct, including text messages, that certain male students had engaged in, both on and off campus, including instances of alleged sexual assault by at least one of the male students.

44.     Jane Doe, Jane Roe, and these other female students each expressed their beliefs that by reason of the conduct of these certain male students at CFA, they did not represent the beliefs of the CFA community generally, and female students at CFA specifically, and therefore, should not be permitted to speak at CFA's graduation.

45.     Both Jane Doe and Jane Roe and these other female CFA students were assured that their allegations and concerns would be investigated, and appropriate action taken.

46.     On May 3, 2021, CFA's Dean of Students, Mr. Fee, met with Jane Doe, who detailed the bullying and harassment she had experienced, including one or more of these male students calling her a "hoe" and "slut," asking her if she would have sex with another CFA student, telling her that her medical condition was "fake," and displayed acts of aggressive physical behavior towards her.  Jane Doe also confirmed this information to Mr. Fee in an email.

47.     Jane Roe fully expected CFA's Dean of Students to meet with her and investigate her allegations against these made students, but he failed to do so.

48.     However, both Jane Doe and Jane Roe, and the other female students, were each left with the firm impression that an appropriate investigation of their concerns would be undertaken by those at CFA and appropriate disciplinary action would be taken against these male students.  In fact, CFA's counselor, Ms. Ragon, informed Jane Doe that she (Ms. Ragon) would not attend graduation if these male students were permitted to speak.

49.    As Jane Doe's anxiety mounted, Jane Doe shared with her counselor continued anxiety over the abusive, sexually harassing, and inappropriate behavior by certain male students at CFA, and Jane Doe was encouraged by her counselor to speak with representatives of CFA, because of the significant impact these issues were having on Jane Doe's mental health and the experience of "validation" she would feel by speaking out, and hoping for positive change.

50.    As the days and weeks went by, Jane Doe's anxiety and depression mounted over the fact that nothing was ever going to happen to these male students.

51.    Because it was apparent by May 13, 2021, that no action would be taken against any of the male students, Jane Doe, Jane Roe, and other female and male students met with Ms. Ragon to express their concerns about CFA's failure to address this extremely serious situation.

52.    During this meeting with Ms. Ragon, Jane Doe, Jane Roe, and the other female and male students discussed with her, the idea of preparing and posting a petition for the purpose of protesting CFA permitting these male students to speak at graduation, an idea which Ms. Ragon endorsed, and that separately, another CFA faculty member (a teacher of Jane Doe), expressed that the "idea of a petition is smart."

53.    On that same day, after having discussed the idea of a petition with Ms. Ragon and the other CFA faculty member, who both supported the idea, more than twenty (20) CFA students, females and males, spent several hours collaborating to

prepare and finalize the Petition. Jane Doe, however, did not participate in drafting the text of the Petition.

54.     Later during the afternoon of May 13, 2021, after the female and male students completed and finalized the Petition, it was sent to Jane Doe who posted the Petition to Change.org. The posted Petition stated:

> The senior class feels that those chosen to speak at graduation and commencement do not accurately represent the class of 2021. The senior class feels [certain identified male students] do not deserve speaking roles in these events. The group feels these students have caused harm to fellow CFA students and would be setting a bad example for our school community. The class feels the speakers chosen for these events should be people who care about their fellow peers and be people who support their classmates. The class would like to remove their speaking roles and replace them with either elected peers or teachers. We ask that they be removed from these roles or step down from them knowing their classmates will not respect their speeches due to their own lack of respect in the CFA community.

55.     Within two hours of the Petition being posted, it had been signed by approximately twenty-seven (27) CFA students, both male and female.

56.     Jane Doe received a call from one of her friends who indicated that Lynn Kenny, Head of CFA's Upper School, was demanding that the Petition be taken down and within a matter of hours from the time the Petition had been posted, it had been taken down, and retaliation against Jane Doe immediately ensued.

57.     On May 14, 2021, Mr. Fee told Jane Doe he wanted to meet with her "about the petition," and they did.

58.     During this meeting, Jane Doe told Mr. Fee about the meeting she and other girls had with Ms. Ragon to express their concerns about CFA's lack of action taken against the male students and their being permitted to speak at graduation.

59.     Jane Doe also informed Mr. Fee that during the meeting with Ms. Ragon, one of the girls mentioned the idea of a petition to her, and Ms. Ragon said she thought it was a "good idea."

60.     Jane Doe further informed Mr. Fee that a "group chat" was created with other female students about the idea of a petition, and that she had also discussed the idea with a CFA Faculty Member, who also agreed that a petition would be a good idea.

61.     Jane Doe informed Mr. Fee that she had not written the Petition, and when she was pressed to provide the identity of those that did, she refused to do so, telling him that the "group" wrote the Petition.

62.     Mr. Fee informed Jane Doe that since she was the person who "uploaded" the Petition, she was "going to have to take the rap for it."

63.     Jane Doe explained to Mr. Fee  that she and the other female students only did what CFA's Counselor and a Faculty Member thought to be appropriate and Mr. Fee told Jane Doe was informed that while that would be "taken into consideration", the posting of the Petition had become a "social thing that's reckless endangerment, false accusations, whenever you put someone's name out in the public domain, that's bad."  Jane Doe was informed by CFA's Dean of Students that while he "appreciated" her not wanting to tell him the other female students that were involved, that it was time for Jane Doe to "share the pain", and again, Jane Doe refused to provide him with the identity of the other girls who had contributed to the content of the Petition.  Later, however, Jane Roe tried to give a list of approximately

fifteen (15) CFA male and female students that had drafted the Petition, including herself, to both Ms. Ragon, CFA's Counselor, and Mr. Fee, CFA's Dean of Students, and they refused to take it, contending that it was "too late."

64.     Jane Doe was asked to provide, and did provide, the identity of the Faculty Member who agreed that the Petition was a good idea.  Jane Doe was informed that this was merely at the "inquiry stage" and that Mr. Fee was going to "follow up" to see if the things she had told him were true.

65.     What was particularly disturbing about Jane Doe being summoned to CFA's Dean of Students' Office less than twenty-four (24) hours after the Petition was posted is that Mr. Fee and others at CFA were in possession of the allegations of sex-based harassment and bullying by certain male students at CFA for more than three (3) weeks, yet undertook no action to cause the sex-based harassment and bullying to which Jane Doe, Jane Roe, and other female students at CFA had been subjected to stop, never even interviewed Jane Roe, and took no action against any of the male students that had engaged in this conduct.

66.     After hearing about the meeting between Jane Doe and Mr. Lee, Jane Roe and other female CFA students immediately attempted to schedule their own meeting with him, to make certain he knew there were several female CFA students involved in the preparation and posting of the Petition, but Mr. Fee repeatedly refused to meet with Jane Roe.

67.     Upon information and belief, representatives of CFA made contact with the parents of some of the other female students at CFA who participated in the

drafting of the Petition and threatened these students with disciplinary action, but again, made no effort to contact Jane Roe or her parents.

68.     Midday on May 15, 2021, Mr. Fee informed Jane Doe's mother, Sally Doe, that Jane Doe would be brought before CFA's Honor Council "in relation to . . . posting the petition on a social site with the names of the students included" for a "major infraction," namely "retaliating, intimidation, threats, reprisal, false accusations and/or making false charges."

69.     Mr. Lee further informed Sally Doe that, "in regard to the Handbook, even were [Jane Doe] to receive a suspension for the "infraction it does not state that she would miss either Salute to Seniors or Commencement." Noticeably absent from any "charge" was a contention that there was anything inappropriate about the use of CFA's logo on the Petition.

70.     The Handbook defines a major infraction "as an action that significantly disrupts the learning environment *and* possibly jeopardizes the safety of self and/or others." The Handbook further states that "[t]he Honor Council will determine student culpability."

71.     Nothing Jane Doe did or failed to do constitutes a "major infraction" as that term is defined in the Handbook, as nothing they did significantly disrupted the "learning environment" or "possibly" jeopardized the "safety of self and/or others." In fact, what Jane Doe, Jill Roe, and the other female and male students at CFA that drafted and then posted the Petition did was attempt to *restore* the learning

environment at CFA, and to stop the continued jeopardy to their "safety of self and/or others" that the conduct of these male students posed.

72.     By May 13, 2021, Jane Doe was eighteen (18), and communications regarding any proposed action against her, under CFA's Policies, should have been submitted to her, but they were not.

73.     Between May 14 and May 18, 2021, John Doe, and wife, Sally Doe, engaged in written communications with Mr. Fee, expressing concerns regarding why Jane Doe was being brought before the Honor Council, and requested specific details as to why the positing of the Petition violated any provisions of CFA's Handbook, and specifically, why the content of the Petition constituted "retaliation, intimidation, threats, reprisal, false accusations, and/or making false charges."

74.     John Doe and wife, Sally Doe attempted to personally meet with the administration at CFA to determine if there could be a resolution, being that bringing Jane Doe before the Honor Council was simply not warranted. John Doe and wife, Sally Doe were assured by both CFA's Counselor, Tobi Ragon, and CFA's Head of Upper School, Lynne Kenny, to "trust in the system."

75.     No further details were ever provided to Jane Doe. However, on May 17, 2021, Mr. Fee informed John and Sally Doe that "the appropriate disciplinary violation under the major infraction in the Handbook is 'who publish material intended to harm or slander another person."

76.     Nothing Jane Doe did or failed to do was "material intended to harm or slander another person." To the contrary, everything contained within the Petition

was true, and simply designed to provide a mechanism for male and female students at CFA to speak out about the sexual-based harassment they had been subjected by certain male students at CFA, and for which those in charge at CFA chose to do absolutely nothing about.

77.     By this point, word had spread among the female students at CFA, including Jane Roe, that Jane Doe was going to be brought before CFA's Honor Council for a "major infraction" for Jane Doe simply having participated, together with other CFA female students, in bringing the repeated and pervasive sexual harassment and bullying which they had experienced from certain male students selected to speak at graduation to the attention of faculty, staff, and other students at CFA.

78.     This retaliation against Jane Doe had achieved the intended effect—to frighten and intimidate female CFA students who experienced "student on student" sexual harassment and bullying to not report it.

79.     CFA's Policies provide that "major infractions" are reported to prospective colleges and universities to which CFA's students apply, and some of the CFA students who had authored the Petition were therefore frightened about coming forward to complain, fearing that they would also be hauled before the Honor Council and a report of a "major infraction" made to the college and universities to which they had applied.

80.     However, Jane Roe was not frightened, and attempted to have Mr. Fee impose the same discipline upon her as was being imposed upon Jane Doe.

81.     By May 18, 2021, the date Jane Doe was scheduled to appear before CFA's Honor Council, Jane Doe was a complete emotional wreck.  Jane Doe has suffered from a number of medical issues during her tenure at CFA, and those at CFA were well aware of her medical condition.

82.     Jane Doe is both tachycardic and orthostatic, and because of the stress brought on by the actions, or inactions, of those at CFA, Jane Doe was too ill to attend school in the several days leading up to May 18, 2021.

83.     As a result, Jane Doe missed CFA's "Ringing of the Bell," an event during which students and family attend and announce where the student will be going to college. While not all students attended that event, upon information and belief, Jane Doe was the only name not mentioned.

84.     Prior to the day Jane Doe was scheduled to appear before the Honor Council, Sally Doe was told she would not be permitted to attend her daughter's appearance before the Honor Council, but that someone would meet Jane Doe outside CFA to accompany her into the meeting room.

85.     On May 18th, however, that did not happen, and Jane Doe was forced to walk into CFA *alone*.

86.     That morning, Sally Doe measured her daughter's heart rate at 139, for which Sally Doe was obviously concerned, and therefore, a fully vaccinated and masked Sally Doe walked into CFA to check on her daughter, but was told by CFA's counselor, Ms. Ragon, to leave, and Sally Doe did so.

87. Therefore, accompanied by Ms. Ragon, the same CFA Counselor who encouraged Jane Doe, Jane Roe, and the other female students to make the Petition, Jane Doe appeared before CFA's Honor Council, made up of CFA's students, with certain CFA staff and administrators also in attendance.

88. During her presentation, Jane Doe read a letter to those present from her private counselor with whom she had been in therapy. That letter detailed the treatment that Jane Doe had been receiving "directly related to bullying and maltreatment by peers" at CFA, including Ms. Ragon's awareness (prior to the posting of the Petition) of Jane Doe and other CFA female students' concerns regarding "abuse and inappropriate student behaviors" of certain male students, and that this counselor had encouraged Jane Doe to speak to CFA's Counselor to voice her concerns.

89. In this letter, Jane Doe's counselor confirmed that "speaking out" as a victim of sexual abuse/assault/harassment" is so important to Jane Doe's overall mental health, and that her "mental and physical state" had deteriorated as a result of what she was experiencing with being brought before the Honor Council because of the Petition.

90. This letter made clear that in the counselor's "professional opinion, Jane Doe and others are at risk of being revictimized by a school system that has made it clear that insensitive and inappropriate behavior is acceptable thus further creating a culture that protects those who abuse and silent victims."

91. CFA's Handbook provides the protocol by which proceedings before the Honor Council are to be conducted. Among other provisions, CFA's Handbook provides that the "Honor Council's deliberations and decision will be made in private . . . A decision will be made by the Council on the day of the hearing. The Honor Council will present its findings and a recommendation for consequences to the Upper School Director and the Dean of Students within 24 hours of the hearing."

92. After Jane Doe's presentation, Ms. Ragon informed the Honor Council that she did not believe Jane Doe should be punished, and believed she (Ms. Ragon) could have given better direction about the Petition.

93. After Jane Doe and Ms. Ragon left, upon information and belief, the student members of the Honor Council deliberated, and upon information and belief, determined that no action should be taken against Jane Doe and that the male students who were the subject matter of Jane Doe, Jane Roe, and the other students' concerns should be disciplined.

94. Upon information and belief, immediately following the deliberation, the student members of the Honor Council were excused.

95. CFA's Handbook provides that the Honor Council Chairperson will write a report that is to include the recommendations of the Honor Council, and that the Upper School Director and Dean of Students may accept the recommendation, make modifications, or ask the Honor Council to reconsider the matter. The Dean of Students and the Upper School Director are required to consider the Honor Council's recommendations and then make the final decision on the student's consequences.

Additionally, as per CFA's Handbook, this decision will be reported to the Honor Council Adviser and Chairperson before the student is notified.

96.    CFA's Handbook further provides that if "it is found that the student violated CFA Code of Conduct, the Honor Council will consider the Consequence Guidelines and make its recommendations to the Dean of Students and Upper School Director.  The Upper School Director will make the final decision."

97.    Upon information and belief, the Honor Council did not determine that Jane Doe violated the CFA Code of Conduct and did not therefore consider the Consequence Guidelines and make its recommendations to the Dean of Students and Upper School Director on this issue.

98.    On May 19, 2021, Sally Doe received an email from CFA's Upper School Director, informing her that Jane Doe's "decision to publish the petition on a public platform, use the CFA logo without permission, and use the full names of CFA students was a poor one, and although [Jane] may not fully understand the ramifications of her actions on the people she names, the petition may have unintended harmful consequences. In an effort to bring reconciliation between the members of the senior class, [Jane] is required to write a note to each mentioned student apologizing for not understanding the ramifications of her actions and the potential harm she caused by 8:00 pm Sunday, May 23rd."

99.    As those at CFA well knew by this point, requiring Jane Doe to write a letter of apology was not necessary to bring "reconciliation" between the members of the senior class, many of whom had already either signed the Petition or personally

voiced their concerns regarding the bullying, sexual harassment, and other inappropriate conduct in which certain male students, including some chosen to speak at graduation, had engaged.

100.   No information was provided to Sally Doe, nor to Jane Doe that Jane Doe had any right to appeal any decision, but CFA's Handbook makes clear that "students, and/or parents have 24 hours to appeal the decision to the Head of School."

101.   CFA's Handbook contains a "Statement of Policy" regarding "Student Conduct and Disciplinary Consequences", and provides, in part, that:

> The principle that students can learn from their mistakes and should be given the opportunity to do so forms the framework of consequences for social misconduct. Discipline at Cape Fear Academy is based on our school values of Integrity, Respect, Resilience, Accountability. Students will be disciplined with compassion, appropriate speed, and the intent to restore both the offender and offended to a place of justice. Disciplinary action will be fair and effective based on clearly stated behavioral expectations and consequences. The school's rules, consequences and procedures for a violation will be disseminated and applied consistently to ensure that consequences are predictable. The Dean of Students and the Upper School Director are in charge of administering the discipline policy of the school. In making decisions concerning discipline, the individual student and their problems will be given full consideration in terms of their action on the total school environment. Students will be handled in an equitable and unbiased manner. Cape Fear Academy is an independent school and not subject to the same rules as public schools. Students who violate expectations for upper school conduct can expect a prompt, firm, and fair response. Our clearly defined expectations are designed to be educational rather than purely punitive and it is the aim of the school to develop in our students a higher degree of personal responsibility for their actions. Thus, while we acknowledge and reward positive contributions to the school community, there are also consequences for improper behavior that require an organized and prompt response . . .

102.   Jane Doe's punishment, being banned from Salute to Seniors and CFA's commencement unless she provided a written apology (to male students to whom she

owed no apology) was not compassionate, nor intended to "restore both the offender and the offended to a place of justice."

103.    Jane Doe's punishment was neither fair or effective, and was not based upon clearly stated behavioral expectations and consequences.

104.    Given that Jane Doe's parents were told that regardless of what occurred, CFA's Handbook would not permit Jane Doe from being banned from Salute to Seniors or CFA's commencement, Jane Doe's punishment was not predictable by her or anyone else.

105.    Jane Doe's punishment was indeed punitive, as she, her parents and sister were deprived of seeing Jane Doe achieve one of life's milestones, graduation from high school.

106.    On May 20 and 21, 2021, John Doe and wife, Sally Doe communicated with CFA's Upper School Director about the directive to their daughter, and during these conversations, Jane Doe's parents were informed that if she did not apologize by May 23, she would not be permitted to attend CFA's "Salute to Seniors" on May 24 and CFA's commencement exercises on May 25.

107.    No provision of CFA's Policies permitted it to exclude Jane Doe from CFA's "Salute to Seniors" on May 24 or CFA's commencement exercises on May 25, 2021.

108.    Contrary to CFA's policies, the Honor Council did not determine that Jane Doe should apologize to anyone or that she should not be permitted to attend "Salute to Seniors" on May 24 or CFA's commencement exercises on May 25, 2021,

and in fact, upon information and belief, the Honor Council concurred with Jane Doe's concerns about the sexual harassment and bullying that had been undertaken by certain male students towards Jane Doe and others.

109.   By May 23, 2021, Jane Doe, an 18-year-old adult, made the decision that she would not apologize, as she had done nothing to apologize for, and Sally Doe informed CFA's Dean of Students and Upper School Director of her daughter's decision, one that they were told that John Doe and wife, Sally Doe were "supporting."

110.   Jane Doe will only graduate from high school once in her life.

111.   Jane Doe will only have the opportunity to participate in a "Salute to Seniors" once in her life.

112.   CFA refused to permit Jane Doe to participate in CFA's "Salute to Seniors" event on May 24, 2021.

113.   CFA refused to permit Jane Doe to participate in CFA's commencement exercises on May 25, 2021.

114.   At both of these events, the names and images of CFA's graduating Seniors were displayed, but nothing whatsoever was said or displayed about Jane Doe, as if she never existed at CFA.

115.   The actions of prohibiting Jane Doe from attending "Salute to Seniors," CFA's commencement exercises, and in failing to recognize Jane Doe in any way for her accomplishments at CFA, like other graduating Seniors at CFA, was completely unwarranted and disproportionate to anything that Jane Doe had allegedly done or failed to do, in that:

(a) Jane Doe had no prior history of disciplinary action at CFA;

(b) Jane Doe is an excellent student;

(c) Jane Doe, Jane Roe and the other female students at CFA who participated in the drafting and posting of any petition did so only after consulting with members of the faculty and staff at CFA, who thought the Petition was a "good idea;" and

(d) no provision of CFA's policies, as John Doe and wife, Sally Doe, were told, permitted CFA to refuse to permit Jane Doe to participate in "Salute to Seniors" or CFA's commencement exercises.

116. Immediately, rumors began to circulate among students, faculty, and staff at CFA about what Jane Doe could have possibly "done" to have been excluded from CFA's "Salute to Seniors" and its commencement exercises.

117. No mention was made at either event of Jane Doe, as if she never existed at CFA.

118. Upon information and belief, at CFA's commencement exercises, Jane Roe and some other graduating Seniors at CFA turned their chairs when the male students who had sexually harassed and/or assaulted and/or bullied Jane Doe, Jane Roe, and other CFA female students at CFA spoke.

119. Jane Roe attempted to confront CFA's Dean of Students and inquire as to why no one from CFA had spoken with Jane Roe, and Jane Roe was informed that CFA's Dean of Students had no intention of speaking with her.

120.    Per the discussions between CFA's Upper School Director and Jane Doe's parents, her diploma was mailed to her.

121.    Graduating Seniors at CFA are permitted continued access to their CFA email accounts (containing valuable information) through July after their May graduation.  However, Jane Doe's access to her CFA email account was immediately suspended.

122.    Jane Doe has already been asked, and for future college or graduate school opportunities, will be asked whether she has ever been "kicked out" of any school that she has ever attended, and given that Jane Doe was prohibited from attending "Salute to Seniors" and CFA commencement exercises, nor her name even mentioned at any of those events, she believes that a truthful answer would be "yes," understanding that her record, therefore, is irrevocably and irreversibly tarnished, and her path to admission to future college or graduate school opportunities compromised.

123.    In further retaliation against Jane Doe for not apologizing, and in direct retaliation against Jill Doe, on June 4, 2021, CFA, through its agent, Ed Ellison, submitted a letter to John Doe and wife, Sally Doe informing them that the enrollment contract for Jill, as a rising 11th grader, for the 2021-22 academic year, was being terminated.  Specifically, the letter stated, in pertinent part:

> the [e]nrollment [c]ontract may be terminated if [CFA] concludes in its *sole discretion* that the actions of a parent impede a constructive relationship or otherwise materially interfere with its accomplishment of its mission . . . [t]he culminating event relates to [Sally Doe's] recent involvement with respect to matters related to your daughter [Jane Doe's] recent interaction with the Honor Council . . . [f]urther you failed

to support and cooperate with the outcome of the school's disciplinary process, as evidenced by your support for [Jane's] decision not to write apologies to any of the three students named in the on-line petition which co-opted the [CFA] logo.

124.    Jane Doe, Jill Doe, and their parents, John Doe and Sally Doe, were stunned by this retaliatory action.  Prior to this letter, no one had ever mentioned that Jane Doe had "co-opted the Cape Fear Academy logo."

125.    Both John Doe and his wife, Sally Doe, have been big supporters of CFA, and Sally Doe has been a substitute teacher there for several years.

126.    But for an incredibly rude "dressing down" of Sally Doe by Ed Ellison because of a gathering of CFA students at John and Sally Doe's house (which was contrary to CFA's policies during the COVID pandemic), there had been no problems whatsoever between anyone at CFA and John Doe and wife, Sally Doe.

127.    Not only had Jane Doe, Jill Doe, John Doe and wife, Sally Doe all been deprived of the joys associated with Jane Doe's graduation and recognition, but now, after an enrollment contract had been executed for the 2021-22 academic year, for the benefit of Jill Doe, at the insistence of those at CFA,  Jill Doe was now being punished for and retaliated against for a matter that even Jane Doe should not have been punished for or retaliated against.

128.    Jill Doe's access to her CFA email account was also suspended.

129.     By June 4, 2021, Jill Doe and her parents had already missed crucial deadlines to apply to and be accepted by other private schools that would offer the same degree of academic, college prep courses offered by CFA, a fact well known to those at CFA.  Similarly, by that date, Jill Doe and her parents had already missed

crucial deadlines to apply for "honors" and "Advanced Placement" classes in any public high school that Jill Doe could attend in New Hanover County.

130. John Doe and wife, Sally Doe, through counsel, demanded that CFA rescind its termination of Jill Doe's enrollment contract for the 2021-22 Academic Year, and CFA refused.

131. John Doe and wife, Sally Doe, through counsel, demanded that Jane Doe and Jill Doe's access to their CFA email accounts (which contained valuable information stored thereon) be restored, and that access was in fact restored for a brief period of time so that both Jane Doe and Jill Doe could retrieve valuable information.

132. With Jane Doe having been banished from "Salute to Seniors" and CFA's commencement exercises, rumors began to circulate among Jill Doe's friends that she had been "kicked out" of CFA, and when the 2021-22 academic year started, those rumors were even more rampant when Jill Doe was not in class.

133. Eventually, Jill Doe was forced to enroll in a public high school where she has few friends; knows none of the teachers or staff; and could only enroll in the only remaining academic courses that were available, and different than the curriculum in which she would have been enrolled at CFA but for CFA's actions in having terminated Jill Doe's enrollment contract.

134. Since June 4, 2021, Jill Doe has suffered anxiety and depression on a daily basis, and is receiving counseling, as the life that she knew prior to June 4,

2021, has been completely disrupted, and she has been alienated from her friends at CFA.

135.   Jill Doe has already been asked, and for future college or graduate school opportunities, will be asked whether she has ever been "kicked out" of any school that she has ever attended, and given that Jill Doe's enrollment contract was terminated from CFA that she had every intention of graduating from, she believes that a truthful answer would be "yes", understanding that her record, therefore, is irrevocably and irreversibly tarnished, and her path to admission to future college or graduate school opportunities compromised, as no one, when the "facts" set forth above are explained, can possibly understand why Jill Doe's enrollment contract was terminated.

## FIRST CLAIM FOR RELIEF
### (Discrimination in Violation of Title IX, 20 U.S.C. §§ 1681, *et. seq.*)

136.   Plaintiffs incorporate herein by reference each of the allegations contained in Paragraphs 1 through 135 as if fully set forth herein.

137.   Jane Doe and Jane Roe are female, and belong to a protected class.

138.   Jane Doe and Jane Roe were subjected to unwelcome sex-based harassment from certain male students at CFA, and this harassment was so sufficiently severe, pervasive and objectively offensive so as to create an abusive educational environment, so as to deprive equal access to educational opportunities or benefits provided by CFA.

139.   CFA, through its agents and employees who had authority to address the sex-based harassment to which Jane Doe and Jane Roe were subjected and to

institute corrective measures, had actual notice of the sex-based harassment to which Jane Doe and Jane Roe were subjected.

140.  CFA failed to promptly investigate claims of sex-based harassment against them, and as to Jane Doe, retaliated against her for speaking out regarding the sex-based harassment to which she and other female students had been subjected, and by being banned from "Salute to Seniors" and CFA's commencement unless she apologized the certain male students.

141.  But for Jane Doe and Jane Roe's membership in the protected class, these adverse actions would not have occurred.

142.  Title IX of the Education Amendments of 1972 provides, in relevant part, that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

143.  Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds.

144.  CFA was a recipient of Federal funds during the 2020-21 Academic Year.

145.  Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student . . . complaints alleging any action which would be prohibited by" Title IX or regulations

thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice). Such prohibited actions include all forms of sexual harassment.

146. The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord[] due process to both parties involved . . . ."

147. The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

(a) Notice . . . of the procedure, including where complaints may be filed;

(b) "Application of the procedure to complaints alleging [sexual] harassment . . . ;"

(c) "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence;"

(d) Designated and reasonably prompt timeframes for the major stages of the complaint process;" and

(e) "Notice to the parties of the outcome of the complaint . . . ."

148. CFA also had an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes alleged sexual assaults."

149. Title IX required CFA, during the 2020-21 Academic Year, to take steps to prevent and remedy two forms of sex-based harassment – Sexual harassment (including sexual violence) and gender-based harassment.

150. Sexual harassment is unwelcome conduct of a sexual nature, and includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal or physical conduct of a sexual nature.

151. Gender-based harassment is unwelcome conduct based on a student's sex, and harassing conduct based on a student's failure to conform to sex stereotypes.

152. Sex-based harassment can be carried out by school employees, other students and third parties.

153. The sex-based harassment, including sexual harassment and gender-based harassment, to which Jane Doe and Jane Roe were subjected at CFA created a hostile environment, in that the conduct was sufficiently serious that it denied and/or limited Jane Doe and Jill Roe's ability to participate in or benefit from CFA's educational programs.

154. CFA knew or should have reasonably known of the sex-based harassment to which both Jane Doe and Jill Roe were subjected, and CFA was required to undertake immediate and appropriate steps to investigate or otherwise determine what occurred.

155. CFA failed to undertake immediate and appropriate steps to investigate or otherwise determine what happened to Jane Doe and Jill Roe.

156. At all times herein mentioned, CFA had substantial control over the male students that had subjected both Jane Doe and Jill Roe to sex-based harassment.

157.    Upon information and belief, the limited investigation undertaken by CFA confirmed that the sex-based harassment to which Jane Doe and Jill Roe were subjected created a hostile environment for them, yet CFA failed to take prompt and effective steps reasonably calculated to end the harassment, eliminate the hostile environment, prevent its recurrence, and, as appropriate, remedy its effects.

158.    By its intentional acts and omissions, CFA was deliberately indifferent to the sex-based harassment to which Jane Doe and Jill Roe were subjected and created a hostile educational environment for them.  CFA's deliberate indifference included, without limitation:

(a)     Ignoring the complaints of Jane Doe and Jill Roe;

(b)     Failing to properly investigate the complaints of Jane Doe and Jill Roe;

(c)     Forcing Jane Doe and Jill Roe to continue to interact with those certain male students that had subjected them to sex-based harassment;

(d)     Failing to take any disciplinary action against the male students that had subjected Jane Doe, Jill Roe and other female students at CFA to sex-based harassment;

(e)     Threatening to impose and then actually imposing disciplinary action against Jane Doe, and retaliating against her, by prohibiting her from attending "Salute to Seniors" and CFA's commencement exercises unless she apologized to the male students that had engaged in sex-based harassment against her, Jane Roe and other female students at CFA;

(f)     Failing to notify Jane Doe and Jane Roe of their rights under Title IX;

(g)     Isolating Jane Doe and Jane Roe from school activities;

(h)     Berating Jane Doe and Jane Roe for having reported the inappropriate sex-based harassment to which they had been subjected;

(i)     Intimidating, or attempting to intimidate, Jane Doe and Jane Roe from standing up for their rights; and

(j)     Failing to create, implement, distribute and enforce sexual harassment or gender-based harassment policies and procedures in compliance with Title IX, despite knowing the need to do so given its receipt of Federal funding.

159.   CFA's actions and inactions caused Jane Doe and Jill Roe to undergo sex-based harassment or make then liable or vulnerable to it.

160.   CFA's intentional and deliberate indifference to Jane Doe and Jill Roe's having been subjected to sex-based harassment was discriminatory and deprived them of access to educational opportunities and benefits provided by CFA.

161.   CFA intentionally deprived Jane Doe and Jill Roe, on the basis of their sex (female), rights to due process and equal protection through the improper administration of and/or the existence, in its then state, of CFA's guidelines and regulations.

162.   As a direct and proximate result of CFA's violation of Jane Doe and Jill Roe's rights under Title IX, Jane Doe and Jill Roe have suffered and continue to suffer losses of educational opportunities and benefits, along with injuries, damages and

losses, including, but not limited to, emotional distress, fear, anxiety, depression and trauma; and expenses for past and future medical and/or psychological care.

## SECOND CLAIM FOR RELIEF
### (Jane Doe and Jill Doe: Retaliation—34 C.F.R. § 106.71)

163.   Jane Doe incorporates herein by reference each of the allegations contained in paragraphs 1 through 162 as if fully set forth herein.

164.   CFA, during the 2020-21 academic year, as a recipient of Federal funding, was prohibited from retaliating against Jane Doe or Jill Doe, and prohibited from intimidating, threatening, coercing, or discriminating against any individual for the purpose of interfering with any right or privilege secured by Title IX, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding.

165.   Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part, constitutes retaliation.

166.   The recipient must keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a formal complaint of sexual harassment, any complainant, any individual who has been reported to be the perpetrator of sex discrimination, any respondent, and any witness.

167.   Jane Doe made a charge and/or opposed a practice made unlawful by Title IX, and thereafter, CFA took a materially adverse action against her because of her protected conduct.

168.   CFA retaliated against Jane Doe by requiring that she appear before CFA's Honor Council, and then prohibited her from attending "Salute to Seniors" and CFA commencement exercises unless she apologized, after Jane Doe made a report or complaint and participated in an investigation of sex-based harassment by certain male students at CFA against her, Jill Roe and other female students at CFA.

169.   CFA further retaliated against Jane Doe, and separately, Jill Doe, by terminating Jill Roe's enrollment contract with CFA for the 2021-22 Academic Year, and that retaliation constitutes intentional sex discrimination prohibited under Title IX.

170.   As a direct and proximate result of CFA's violation of Jane Doe and Jill Doe's rights under Title IX, and by retaliating against them, Jane Doe and Jill Doe have suffered and continue to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to, emotional distress, fear, anxiety, depression and trauma; and expenses for past and future medical and/or psychological care.

## THIRD CLAIM FOR RELIEF
### (Jane Doe—Intentional Infliction of Emotional Distress)

171.   Jane Doe incorporates herein by reference the allegations contained in paragraphs 1 through 170 as if fully set forth herein.

172.   CFA and its agents, servants and employees, engaged in extreme and outrageous conduct.  That conduct included failing to take appropriate action against male students who had bullied and sexually harassed her, and then retaliating against her for speaking out against that behavior by prohibiting her from attending CFA's Salute to Seniors and its commencement exercises unless she apologized, and when she refused, making good on its prohibitions.

173.   That conduct was intended to cause and did cause Jane Doe severe emotional distress.

174.   CFA and its agents, servants and employees acted intentionally and/or with reckless indifference as to Jane Doe's emotional state of mind.  By the date that CFA informed Jane Doe that she would be prohibited from attending CFA's Salute to Seniors and its commencement unless she apologized to certain male students to whom she owed no apology, and when she refused, making good on its prohibitions, CFA knew, or reasonably should have known, of Jane Doe's underlying medical and emotional conditions for which she was receiving active treatment.

175.   As a direct and proximate result of CFA's intentional infliction of emotional distress upon Jane Doe, she has suffered severe emotional distress, for which she has been damaged and is entitled to have and recover from CFA an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

### FOURTH CLAIM FOR RELIEF
### (Jane Doe—Negligent Infliction of Emotional Distress)

176.   Jane Doe incorporates herein by reference the allegations contained in paragraphs 1 through 175 as if fully set forth herein.

177.   CFA negligently engaged in conduct, namely, failing to properly investigate Jane Doe's allegations of sex-based harassment and bullying from certain male students at CFA and take appropriate action against these male students; demanding that Jane Doe apologize for speaking the truth; retaliating against Jane Doe for complaining and posting a Petition about the sexual harassment and bullying that she and other female students at CFA had experienced from certain male students at CFA; and retaliating against Jane Doe and then by retaliating against her sister, Jill Doe, by terminating Jill Doe's enrollment contract for the 2021-22 academic year at CFA.

178.   It was foreseeable to CFA that such conduct would cause Jane Doe severe emotional distress.

179.   CFA's conduct, as detailed herein, did in fact cause Jane Doe severe emotional distress.

180.   As a direct and proximate result of CFA's negligent infliction of emotional distress upon Jane Doe, she has suffered severe emotional distress, for which she has been damaged and is entitled to have and recover from CFA an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

## FIFTH CLAIM FOR RELIEF
### (Jill Doe—Intentional Infliction of Emotional Distress)

181.   Jill Doe incorporates herein by reference the allegations contained in paragraphs 1 through 180 as if fully set forth herein.

182.   CFA and its agents, servants and employees, engaged in extreme and outrageous conduct in the termination of Jill Does' enrollment contract for the 2021-

22 academic year.

183.    That conduct was intended to cause and did cause Jill Doe severe emotional distress.

184.    CFA and its agents, servants and employees acted intentionally and/or with reckless indifference as to Jill Doe's emotional state of mind.  By the date that CFA informed Jill Doe's parents that her enrollment contract for the 2021-22 academic year was being terminated, CFA knew, or reasonably should have known, that Jill Doe's circle of friends and support were at CFA, and that Jill Doe would never be able to replace the environment at CFA in which she had prospered.

185.    As a direct and proximate result of CFA's intentional infliction of emotional distress upon Jill Doe, she has suffered severe emotional distress, for which she has been damaged and is entitled to have and recover from CFA an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**SIXTH CLAIM FOR RELIEF**
**(Jill Doe—Negligent Infliction of Emotional Distress)**

186.    Jill Doe incorporates herein by reference the allegations contained in paragraphs 1 through 185 as if fully set forth herein.

187.    CFA negligently engaged in conduct, namely, retaliating against Jill Doe, by terminating Jill Doe's enrollment contract for the 2021-22 academic year at CFA.

188.    It was foreseeable to CFA that such conduct would cause Jill Doe severe emotional distress.

189. CFA's conduct, as detailed herein, did in fact cause Jill Doe severe emotional distress.

190. As a direct and proximate result of CFA's negligent infliction of emotional distress upon Jill Doe, she has suffered severe emotional distress, for which she has been damaged and is entitled to have and recover from CFA an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**SEVENTH CLAIM FOR RELIEF**
**(Jane Doe—Breach of Contract; Violation of Implied Covenant of Good Faith and Fair Dealing)**

191. Jane Doe incorporates herein by reference the allegations contained in paragraphs 1 through 190 as if fully set forth herein.

192. John Doe and wife, Sally Doe, executed an enrollment contract with CFA on behalf of their daughter, Jane Doe, for the 2020-21 academic year.

193. The Enrollment Contract for Jane Doe was at all times material to this action valid and enforceable.

194. The Enrollment Contract for Jane Doe for the 2020-21 academic year was executed for the direct, and not incidental, benefit of Jane Doe, as it was intended to confer a legally enforceable benefit on Jane Doe.

195. In every contract in North Carolina, including the Enrollment Contract for Jane Doe for the 2020-21 academic year, there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

196.   By prohibiting Jane Doe from participating in the "Salute to Seniors" event and CFA's commencement exercises, CFA deprived Jane Doe from her rights to receive the benefits of the Enrollment Contract for the 2020-21, including participation in "Salute to Senior" and CFA's commencement exercises.

197.   Jane Doe fulfilled all obligations under the Enrollment Contract which CFA imposed upon her or John Doe and wife, Sally Doe, so as to participate in "Salute to Seniors" and CFA's commencement exercises.

198.   CFA breached the Enrollment Contract for Jane Doe for the 2020-21 academic year, and breached the implied covenant of good faith and fair dealing contained therein.

199.   As a direct and proximate result of CFA's breach of contract, and as a natural and probable consequence thereof, all within the contemplation of the parties at the time that the Enrollment Contract for Jane Doe for the 2020-21 Academic Year was executed, Jane Doe has suffered both general, and upon information and belief, special damages, all of which CFA either did foresee or should have foreseen, for which she has been damaged and is entitled to have and recover from CFA an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

## EIGHTH CLAIM FOR RELIEF
**(Jill Doe—Breach of Contract; Violation of Implied Covenant of Good Faith and Fair Dealing)**

200.   Jill Doe incorporates herein by reference the allegations contained in paragraphs 1 through 199 as if fully set forth herein.

201.   John Doe and wife, Sally Doe, executed an enrollment contract with CFA on behalf of their daughter, Jill Doe, for the 2021-22 academic year.

202.   The Enrollment Contract for Jill Doe was at all times material to this action valid and enforceable.

203.   The Enrollment Contract for Jill Doe for the 2021-22 academic year was executed for the direct, and not incidental, benefit of Jill Doe, as it was intended to confer a legally enforceable benefit on Jill Doe.

204.   In every contract in North Carolina, including the Enrollment Contract for Jill Doe for the 2021-22 academic year, there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

205.   By terminating Jill Doe's Enrollment Contract for the 2021-22 Academic Year, CFA deprived Jill Doe from her rights to receive the benefits of the Enrollment Contract for the 2021-22 Academic Year.

206.   Jill Doe fulfilled all obligations under the Enrollment Contract with CFA imposed upon her or John Doe and wife, Sally Doe.

207.   CFA breached the Enrollment Contract for Jill Doe for the 2021-22 academic year, and breached the implied covenant of good faith and fair dealing contained therein.

208.   As a direct and proximate result of CFA's breach of contract, and as a natural and probable consequence thereof, all within the contemplation of the parties at the time that the Enrollment Contract for Jill Doe for the 2021-22 Academic Year

was executed, Jill Doe has suffered both general, and upon information and belief, special damages, all of which CFA either did foresee or should have foreseen, for which she has been damaged and is entitled to have and recover from CFA an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**WHEREFORE**, the Plaintiffs pray the Court as follows:

1. To enter judgment in favor of Plaintiffs Jane Doe, Jill Doe, by her parents and next friends, John Doe and wife, Sally Doe, and Jane Roe on their claims under Title IX;

2. To award the Plaintiffs compensatory damages in amounts to be established at trial, including damages for deprivation of equal access to the educational opportunities and benefits provided at CFA, and damages for past, present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and such other damages as a jury may determine to have been suffered by them;

3. To award the Plaintiffs Jane Doe and Jill Doe, by her parents and next friends, John Doe and wife, Sally Doe, an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) on their Third through Eighth Claims for Relief;

4. That the Plaintiffs be awarded pre-judgment interest, their courts costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988;

5. For trial by jury on all issues so triable; and

6. For such other and further relief as to the Court seems just and proper.

Respectfully submitted this the 6th day of October, 2021.

**SHIPMAN & WRIGHT, L.L.P.**
*Attorneys for Plaintiffs*

By:   /s/ Gary K. Shipman
        **GARY K. SHIPMAN**
        N.C. State Bar No.: 9464
        **KEVIN L. LITTLEJOHN, II**
        N.C. State Bar No.: 56667
        575 Military Cutoff Road, Suite 106
        Wilmington, NC 28405
        Telephone: (910) 762-1990
        Facsimile: (910) 762-6752
        Email: gshipman@shipmanlaw.com
        Email: klittlejohn@shipmanlaw.com