IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:21-cv-00169-D

| | |
|---|---|
| ELIZABETH KARANIK, CHARLOTTE KARANIK, by her parents and next friends, JOHN KARANIK and wife KIMBERLY KARANIK, and NATALIE PRESSLEY,<br><br>Plaintiffs,<br><br>v.<br><br>CAPE FEAR ACADEMY, INC.,<br><br>Defendant. | **Defendant's Memorandum in Support of Motion for Reconsideration or, in the Alternative, to Amend Order to Certify It for Interlocutory Appeal and to Stay Proceedings** |

In denying Defendant Cape Fear Academy, Inc.'s ("CFA") motion to dismiss in part, the Court held that CFA is subject to Title IX of the Education Amendments of 1972 because it received "federal financial assistance" in the form of private loans guaranteed by the Small Business Administration ("SBA") under the Paycheck Protection Program ("PPP"). The Court held that privately funded PPP loans constitute "federal financial assistance" because they are either (1) a "grant or loan of Federal financial assistance" or (2) "the result of an arrangement which has as one of its purposes the provision of assistance to any education program or activity."

Neither conclusion is correct. (1) Case law and implementing regulations demonstrate that a "grant or loan" can only qualify as "federal financial assistance" when *federal* funds are granted or loaned. (2) Whatever "arrangements" may exist that could constitute "federal financial assistance," one particular arrangement that Title IX expressly exempts is a contract of guaranty. Because operators of educational programs are not in the business of entering into such contracts, the Court has made the "contract of guaranty" exception superfluous. CFA respectfully submits that the Court's decision constitutes clear legal error and should be reconsidered.

Alternatively, the Court should amend its order to certify it for interlocutory appeal under 28 U.S.C. § 1292(b) and stay this action while CFA seeks and pursues any permitted appeal by the Fourth Circuit Court of Appeals. Whether SBA contracts of guaranty for PPP loans qualify as "federal financial assistance" for Title IX is a "controlling question of law as to which there is substantial ground for difference of opinion." The issue was one of first impression—indeed, CFA has found no decisions regarding whether SBA contracts of guaranty in any context qualify as "federal financial assistance" for Title IX—and one for which the Congressional Research Service reached the opposite conclusion. Moreover, the Court expressly declined to reach the Plaintiffs' "weaker" arguments, and instead adduced new arguments to support its holding. CFA had no opportunity to respond to the Court's reasoning and was precluded by local rule from explaining the effect of a decision by the Second Circuit Court of Appeals about the nature of the PPP regime as a "loan guaranty program." Certification would be appropriate here because "an immediate appeal from the order may materially advance the ultimate termination of the litigation": dismissal of the Title IX claims would eliminate Plaintiffs' only federal claims and, CFA would argue, their breach of contract claims as well.

Whether CFA is subject to Title IX claims is an issue that, if CFA prevails, would prevent likely irreparable harm and save all parties and the Court an immense amount of unnecessary time and expense. Certification and a stay of proceedings are appropriate here, where the Court's decision about this central, novel issue was—if not in error—an undoubtedly close call that is ripe for review by the Fourth Circuit.

## BACKGROUND

In their Amended Complaint, Plaintiffs have asserted claims against CFA for discrimination and retaliation under Title IX. ECF 20 ¶¶ 209–256. They allege that CFA is subject

to Title IX because it received "federal financial assistance" when it applied for and received a PPP loan from First Carolina Bank that was guaranteed by the SBA. *Id.* ¶ 10.

On January 10, 2022, CFA moved to dismiss, among others, Plaintiffs' Title IX claims on the basis that CFA's obtaining a PPP loan, guaranteed by SBA, cannot qualify as "federal financial assistance" because Title IX exempts "contracts of insurance or guaranty" from the definition of such assistance. ECF 23 at 5–14.

On June 17, 2022, the Court denied CFA's motion in relevant part. ECF 30 ("Order") at 21, 25. The Court held that, "[b]y plausibly alleging that CFA had a PPP loan during the 2020-21 academic year, plaintiffs plausibly alleged" that "CFA received 'federal financial assistance' and had to comply with Title IX for the life of its loan." *Id.* at 16–17. The Court provided two alternative bases for its holding. The first basis was that "[a] PPP loan . . . is '[a] grant or loan of Federal financial assistance.'" *Id.* at 12 (quoting 34 C.F.R. § 106.2(g)(1)). Although the Court did not explain or cite authority for how to determine whether a private loan becomes one "of Federal financial assistance," the Court reasoned that PPP loans qualify because of their connections to the federal government. *Id.* at 12–14. These connections include the SBA's registering and guaranteeing the loans, and also its regulating certain terms of the loan, such as any interest rate modification. *Id.*

The second basis for the Court's holding was that PPP loans "are the result of an 'arrangement which has as one of its purposes the provision of assistance to any education program or activity.'" *Id.* at 14 (quoting 34 C.F.R. § 106.2(g)(1), (5)). First Carolina Bank applied for and obtained a loan guaranty from SBA. *Id.* at 15. The Bank then acted as an "intermediary" for the federal government by loaning funds to Congress's "intended beneficiary," CFA. *Id.* at 14.

## LEGAL STANDARD

"[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case," including for "clear error causing manifest injustice." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (quotation marks and alterations omitted). Clear legal error warrants reconsideration because "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (vacating order denying motion for reconsideration as an abuse of discretion).

Under 28 U.S.C. § 1292(b), a district judge may certify for interlocutory appeal an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" and from which "an immediate appeal . . . may materially advance the ultimate termination of the litigation." § 1292(b). These "requirements . . . are clearly satisfied" where the court is "faced with a pure question of law and [the court's] resolution of it [would] terminate[] the case." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011).

## ARGUMENT

### I. The Court Should Reconsider Its Order, and Grant the Motion to Dismiss, Because Holding that PPP Loans Are "Federal Financial Assistance" Was Clear Error that Will Cause Manifest Injustice

The Court reasoned that PPP loans constitute "federal financial assistance" for purposes of Title IX because such loans are either (1) a "grant or loan of Federal financial assistance" or (2) "the result of an 'arrangement which has as one of its purposes the provision of assistance to any education program or activity.'" Order at 12–14 (quoting 34 C.F.R. § 106.2(g)(1), (5)). But the Court's first line of reasoning cannot be correct because grants or loans of federal financial assistance must consist of *federal* funds, and the second line cannot be correct because Congress and the Department of Education ("DOE") have made clear that "federal financial assistance"

4

under Title IX cannot be "arranged" through a contract of guaranty. The Court's holding writes the "contract of insurance or guaranty" exception out of the law because, in the Title IX context, a lender would always be entering into the contract of guaranty, and the operator of the educational program or activity would always be the borrower.

"The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe*, 326 F.3d at 515 (vacating order denying motion for reconsideration as an abuse of discretion). The Court's Order contains clear legal error that warrants reconsideration and dismissal of Plaintiffs' claims.

### A. The PPP Loan to CFA Was Not a Grant or Loan of "Federal Financial Assistance" Because It Was Privately Funded

The PPP loan that CFA received was not a "grant or loan of Federal financial assistance" (34 C.F.R. § 106.2(g)(1)) because it was privately funded by First Carolina Bank. The Supreme Court's decision in *NCAA v. Smith* (cited in the Order at 11, 13–14) makes clear that grants or loans of "federal financial assistance," as the name suggests, must be made with federal funds. The Court held that the NCAA was *not* subject to Title IX and specifically grounded its holding in the fact that "there [wa]s no allegation that NCAA members paid their dues with *federal funds* earmarked for that purpose." *NCAA v. Smith*, 525 U.S. 459, 468 (1999) (emphasis added).

The Court did not cite—and CFA has not found—any case endorsing the applicability of Title IX to an entity which received a private loan. The Court cited two decisions, besides *NCAA*, for the proposition that federal financial assistance can be received from intermediaries. Order at 11, 13–14 (citing *Grove City College v. Bell*, 465 U.S. 555 (1984); *Peltier v. Charter Day School, Inc.*, No. 20-1001, No. 20-1023, 2022 WL 2128579 (4th Cir. June 14, 2022)). But the directness or indirectness of a grant or loan is beside the point: the courts in those cases held that Title IX applied because the grants or loans at issue had been made with federal funds. *See Grove City*,

5

465 U.S. at 569–70 ("[W]e have little trouble concluding that Title IX coverage is not foreclosed because *federal funds* are granted to Grove City's students rather than directly to one of the College's educational programs." (emphasis added)); *Peltier*, 2022 WL 2128579, at *14 ("RBA, as a recipient of *federal funds* through an intermediary, is subject to the requirements of Title IX." (emphasis added)).[1]  This case might have been different if SBA had provided federal funds to First Carolina Bank that were then loaned to CFA, but it did not.  SBA's only involvement was to guarantee a private loan, and Title IX exempts contracts of guaranty from its definition of "federal financial assistance."  *See* 20 U.S.C. § 1682; 34 C.F.R. § 106.2(g)(5).

The Court's reasoning was circular: PPP loans constitute federal financial assistance because they are "loan[s] of Federal financial assistance."  Order at 12.  Without any further case law or guidance about what qualifies as "Federal financial assistance," the Court reasoned that PPP loans are "Federal" in an abstract, undefined sense because of various connections between the private loans and a federal agency, the SBA.  Order at 12–14.  These connections included the fact that the SBA registers and guarantees PPP loans.  *Id.*  But this chain of logic cannot be correct because the result would be that the phrase "grant or loan of Federal financial assistance" would have a broader definition than the term it is supposed to define, "federal financial assistance," which term expressly excludes "contracts of insurance or guaranty."

The circularity of the Court's reasoning resulted from a misunderstanding of DOE's admittedly unhelpful use of the term "federal financial assistance" in the regulatory definition of

---

[1] *See also United States v. Hersom*, 588 F.3d 60, 65 (1st Cir. 2009) ("We view these Supreme Court cases [including *NCAA* and *Grove City*] as establishing that the term "Federal financial assistance" generally refers to entities receiving *federal funds*—directly or indirectly—so long as they are the intended recipients of the federal legislation providing the assistance." (emphasis added)).

6
Case 7:21-cv-00169-D   Document 38   Filed 07/01/22   Page 6 of 17

that very term; that is, section 106.2(g)(1) defines "federal financial assistance" as a "grant or loan of Federal financial assistance." 34 C.F.R. § 106.2(g)(1). Still, the Court overlooked two structural clues that clarify the meaning of "Federal financial assistance" in this context. The first clue is the introductory language stating that DOE's definition applies "when [federal financial assistance is] authorized or extended under a law administered by the Department." *Id.* When DOE defined the term,[2] it did so in the context of the programs that DOE itself administers: programs in which grants or loans of ***federal*** funds are extended to educational programs or activities.[3] DOE did not have in mind contracts of guaranty—indeed, it expressly exempted them—and certainly not contracts of guaranty extended under a program "administered" by SBA.

The second structural clue is the relationship between subsection (g)(1) to the remaining forms of "federal financial assistance" listed in subsection (g). When one compares the description in (g)(1) to the descriptions in (g)(2) through (g)(5), one can see that (g)(1) refers to the most basic form of financial assistance—"funds" extended by the federal government through a "grant or loan"—and the other subsections expand the definition beyond a simple transfer of federal funds: (g)(2) and (g)(4) add in grants, sales, or leases of federal property; (g)(3) adds in services; and the first part of (g)(5) adds in "other contract[s], agreement[s], or arrangement[s]." This structure is

---

[2] To be precise, DOE's predecessor agency, the Department of Health, Education, and Welfare ("HEW") first promulgated regulations defining the term with this introductory language. Dep't of Justice, Title IX Legal Manual § II.3, https://www.justice.gov/crt/title-ix ("DOJ Title IX Manual"). When Congress split HEW into DOE and the Department of Health and Human Services ("DHHS") in 1980, both new agencies codified regulations that adopted the language previously used by HEW. *Id.*; 34 CFR 106.2(g) (DOE); 45 C.F.R. § 86.2(g) (DHHS).

[3] That does not mean that DOE's regulations are unhelpful in interpreting Title IX. To the contrary, DOE's regulations are generally treated as the definitive source for interpreting that Title. *See McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 288 (2d Cir. 2004) ("We defer to the interpretation of Title IX that [DOE's] regulations provide.").

even clearer in the agency regulations implementing Title VI of the Civil Rights Act of 1964, which regulations are a useful guide here because "Congress intended that Title IX be interpreted and enforced in the same manner as Title VI."[4] The Title VI regulations, which have been promulgated by DOE, SBA, and various other agencies, all contain a common definition of "federal financial assistance" by listing five forms of "federal financial assistance" similar to the list in Title IX. But unlike DOE's self-referential definition in (g)(1), the first definition in these regulations is "grants and loans of Federal *funds*." *E.g.*, 13 C.F.R. § 112.2(b)(1) (SBA); 28 C.F.R. § 42.102(c)(1) (Department of Justice); 34 C.F.R. § 100.13(f)(1) (DOE); C.F.R. § 80.13(g)(1) (DHHS). The remaining subsections proceed to expand on that definition in the same way that subsections (g)(2) through (g)(5) do so for (g)(1).[5] The Court's interpretation of (g)(1) violates this structure by expansively interpreting the term "grant or loan of Federal financial assistance" in a way that overlaps with the meaning added by other subsections.

The Court further erred in its reasoning by relying on two decisions for the proposition that the PPP program is a "loan program." Order at 12–13 (citing *Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022); *Tradeways, Ltd. v. United States Dep't of the Treasury*, No. CV ELH-20-1324, 2020 WL 3447767 (D. Md. June 24, 2020)). When CFA filed the *Springfield* decision

---

[4] *Preston v. Com. of Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 n.2 (4th Cir. 1994) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696 (1979)).

[5] These Title VI regulations also differ in that the fifth item in the list does not expressly exempt a "contract of insurance or guaranty." *E.g.*, 34 C.F.R. § 100.13(f)(5) (DOE) ("The term Federal financial assistance includes . . . any Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance."). However, that exemption is made express elsewhere in the Title VI regulations. *E.g.*, 13 C.F.R. § 112.2(c) (SBA) ("This part does not apply to financial assistance extended by way of insurance or guarantee."); 34 C.F.R. § 100.2 (DOE) ("This regulation does not apply to . . . any Federal financial assistance by way of insurance or guaranty contracts . . . .").

with the Court as supplemental authority, Local Rules prevented CFA from explaining the decision's application here. To be sure, the courts in *Springfield* and *Tradeways* described the PPP program as a "loan program," but they only did so in the context of determining whether or not PPP loans are "grants" for bankruptcy law purposes—both courts found that they were not. *Springfield*, 28 F.4th ("Where Congress has deliberately designed what is plainly a loan program under the CARES Act, we cannot controvert its clear intent and re-classify the PPP as a 'grant' program for purposes of Section 525(a)."); *Tradeways*, 2020 WL 3447767, at *17 ("[T]he $659 billion disbursed to borrowers through the PPP are loans, not grants.").

More relevant here, however, is that both courts, after reviewing the statutory text, more precisely described the PPP program as one that *guarantees* private loans. *See Springfield*, 28 F.4th at 423 ("[T]he substance of the PPP conclusively demonstrates that it is, as described, a loan guaranty program, not a grant program."); *Tradeways*, 2020 WL 3447767, at *17 ("[T]he CARES Act authorizes the Administrator to 'guarantee covered loans' issued pursuant to the PPP."). Neither court suggested, or even considered whether, such guaranties would qualify as "grants or loans of federal financial assistance." The Court clearly erred in relying on these decisions to hold otherwise.

> B. The PPP Loan to CFA Cannot Be, for Title IX Purposes, the Result of an Arrangement Which Had as One of Its Purposes the Provision of Assistance to Any Education Program or Activity Because the "Arrangement" Was a Contract of Guaranty

The Court clearly erred in reasoning that "PPP's structure—i.e., private lenders making loans to borrowers with a guaranty from the SBA" qualified as an "'arrangement which has as one of its purposes the provision of assistance to any education program or activity.'" Order at 14 (quoting 34 C.F.R. § 106.2(g)(5)). The regulation that the Court quoted in part immediately proceeds to exempt certain "arrangements" from the definition of "federal financial assistance,"

namely, "a contract of insurance or guaranty." § 106.2(g)(5). Indeed, as the Court acknowledged, the law clearly exempts such contracts. Order at 12.⁶ Hence, the PPP loan guaranty program may be an arrangement that provides assistance to education programs and activities, but that arrangement expressly cannot qualify as "federal financial assistance." Interpreting the regulation as the Court did violates "the canon against reading conflicts into statutes" and risks "transforming [the Court] from [an] expounder[] of what the law *is* into [a] policymaker[] choosing what the law *should be*." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624, 1630 (2018) (emphases in original).

The Court's interpretation of Title IX is clearly incorrect because it writes the "contract . . . of guaranty" exception out of the law.⁷ The only potential defendants in a Title IX suit are operators of "education program[s] or activit[ies]." *See* 20 U.S.C. § 1681. But those operators are in the business of *educating*, not making loans, so they have no need to enter into contracts of guaranty—whether federally provided or not. On the other hand, lenders *are* in the business of making loans and routinely need to enter into contracts of guaranty, but they do not operate education programs or activities, and so are not potential Title IX defendants. This distinction means that the guaranty "arrangement" that the Court found so significant here is, in fact, the *only* arrangement one would expect to see in a Title IX action: a lender entering into a contract of guaranty, and the operator of an education program or activity borrowing the funds. If the Court's

---

⁶ *See also* DOJ Title IX Manual § III.A.3 ("Title IX specifically states that it does not apply to contracts of insurance or guaranty.").

⁷ *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotations omitted)); *Ashley v. Civil Air Patrol*, No. 2:04-CV-22-FL, 2007 WL 9718314, at *3 (E.D.N.C. May 4, 2007) (stating that courts should "give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous" (internal quotations omitted)).

definition of "federal financial assistance" were the rule, then the "contract . . . of guaranty" exception *would never apply* because lenders don't need it—they don't operate education programs or activities—and operators borrowing the funds wouldn't qualify for it—the contract "is between the lender and the SBA" (Order at 15). *See Keen v. Helson*, 930 F.3d 799, 806 (6th Cir. 2019) ("[C]ourts are not at liberty to rewrite a statute just because they believe that doing so would better effectuate Congress's purposes . . . . This is especially true where such an expansion would entitle a whole new class of people to sue.").

The situation is different under, for example, Title VI. That Title resembles Title IX in that it prohibits discrimination (albeit on the basis of race, color, or national origin) by receivers of "Federal financial assistance" while exempting any "contract of insurance or guaranty." 42 U.S.C. §§ 2000d, 2000d-1. But unlike Title IX, Title VI applies to "*any* program or activity"—not just "any *education* program or activity"—"receiving Federal financial assistance." *Compare* 42 U.S.C. § 2000d, *with* 20 U.S.C. § 1681. Because the scope of Title VI omits the qualifier "education" in referring to "any program or activity," lenders are potential defendants for Title VI claims.[8] These lenders can potentially avoid Title VI liability in cases where the only "federal financial assistance" they received was a "contract of guaranty." *See, e.g.*, *Marshall v. Webster Bank, N.A.*, No. 3:10-CV-908 JCH, 2011 WL 219693, at *7 (D. Conn. Jan. 21, 2011) (dismissing

---

[8] The same is true of the Rehabilitation Act of 1973, which likewise applies to "any program or activity receiving Federal financial assistance" (although the courts are split about whether the Act exempts a "contract of insurance or guaranty," *see* Order at 16). 29 U.S.C. § 794. As the Court observed about *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275 (6th Cir. 1996), and *Moore v. Sun Bank of N. Florida, N.A.*, 923 F.2d 1423 (11th Cir. 1991), which were cited in CFA's motion, "both cases involved whether the *lender* had received federal financial assistance that would expose it to liability for disability discrimination under the Rehabilitation Act." Order at 16 (emphasis in original). These lenders would never have been the subject of a Title IX claim because they do not operate an "education" program or activity.

11

Case 7:21-cv-00169-D   Document 38   Filed 07/01/22   Page 11 of 17

claim that "Title VI prohibit[ed] discrimination by [a bank]" and rejecting plaintiff's theory that the bank "receive[d] federal financial assistance in the form of deposit insurance from the FDIC" because, "[a]ssuming that FDIC deposit insurance is federal financial assistance, it is federal assistance in the form of a guaranty or contract for insurance"). Not so with Title IX.

The Court relied again on case law holding that "federal financial assistance" can be extended through an intermediary when the recipient is "Congress's intended recipient[.]" Order at 14. But these are the same decisions in which, as explained *supra* at 5–6, the "financial assistance" consisted of federal, not private, funds. Again, the decision in *NCAA* in fact demonstrates the Order's error because there the Supreme Court held that Title IX was inapplicable since "there [wa]s no allegation that NCAA members paid their dues with federal funds earmarked for that purpose." 525 U.S. at 468. The decision in *U.S. Department of Transportation v. Paralyzed Veterans of America*, which dealt with the Rehabilitation Act, likewise shows the error of the Order. The Supreme Court held that the Act was inapplicable to commercial airlines because they had not received "federal financial assistance." 477 U.S. 597, 606–07 (1986). The basis for this holding was that—as with CFA—"[n]ot a single penny of [federal] money [wa]s given to the airlines." *Id.* at 605.

These decisions control on the issue of whether CFA received "federal financial assistance" here. The only potential "federal financial assistance" extended in this "arrangement" would have been SBA's, *i.e.*, the *federal* agency's, contract of guaranty with First Carolina Bank. All parties agree that Title IX expressly exempted that transaction from the definition of "federal financial assistance." But if that is so, it cannot be the case that "federal financial assistance" materialized in the *subsequent* transaction—one step *removed* from the federal agency—when First Carolina Bank loaned private funds to CFA. The absence of federal funds is dispositive.

\* \* \*

The Order contains clear legal error: CFA cannot have received "federal financial assistance" for purposes of Title IX by accepting a loan, even though federally guaranteed, consisting of private funds. Requiring the parties and Court to proceed to discovery and expend significant time and resources litigating a case of first impression that would be subject to dismissal but for this clear legal error is the exact type of manifest injustice warranting reconsideration. The Court should reconsider its Order and grant the motion to dismiss.[9]

## II. Alternatively, the Court Should Amend Its Order and Certify It for Interlocutory Appeal, and Stay the Proceedings in the Interim

Alternatively, the Court should avoid the potential manifest injustice resulting from its possible error by certifying its Order for interlocutory appeal and staying the proceedings. Each of the requirements for certified appeal under 28 U.S.C. § 1292(b) "are clearly satisfied" here,

---

[9] If the Court grants the motion to reconsider, it should dismiss Plaintiffs' claims in their entirety, including the breach of contract claims. Charlotte Karanik's breach of contract claim is founded on her allegation that CFA canceled her contract in bad faith as retaliation for Title IX-protected behavior. *See* Order at 32. Elizabeth Karanik's breach of contract claim is likewise primarily founded on the allegation that "CFA unlawfully retaliated against her in violation of Title IX." *Id.* at 31. Dismissal of Plaintiffs' Title IX claims disposes of these claims as well.

Arguably, Elizabeth Karanik's breach of contract claim would partially survive dismissal because she alleges a violation of CFA's student handbook. *See id.* But even if that were so, that sole remaining claim, grounded in state law, would not be an appropriate subject of the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Jordan v. Fayetteville Metro. Hous. Auth. Bd.*, No. 5:16-CV-710-FL, 2017 WL 1187656, at *5 (E.D.N.C. Mar. 30, 2017) ("In light of the dismissal of . . . the sole claims over which the court had original jurisdiction, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims . . . ." (citing § 1367(c)(3))).

where the court is "faced with a pure question of law and [the court's] resolution of it [would] terminate[] the case." *Kennedy*, 657 F.3d at 195.

*First*, the Order "involves a controlling question of law" (§ 1292(b)), namely, whether SBA contracts of guaranty for PPP loans qualify as "federal financial assistance" for purposes of Title IX. That question is one of statutory interpretation, and it would dispose of Plaintiffs' claims (*see supra* note 9). *See Adams v. S. Produce Distributors, Inc.*, No. 7:20-CV-53-FL, 2021 WL 394842, at *3 (E.D.N.C. Feb. 4, 2021) ("A controlling question of law is one that presents a pure question of law, i.e., an abstract legal issue that the reviewing court can decide quickly and cleanly without having to delve beyond the surface of the record in order to determine the facts." (alterations omitted)).

*Second*, "there is substantial ground for difference of opinion" as to the controlling question of law. § 1292(b). If Section I of this motion and CFA's briefing on the motion to dismiss have not succeeded in persuading the Court that CFA is correct about the applicability of Title IX to PPP loan recipients—an issue of first impression—then perhaps they have at least persuaded the Court that the issue is a close one. Neither CFA nor apparently the Court have identified a single decision deciding the same issue, or even the broader issue of whether SBA contracts of guaranty in any context qualify as "federal financial assistance" under Title IX. *See Adams*, 2021 WL 394842, at *3 ("A substantial ground for disagreement may arise if there is a novel and difficult issue of first impression . . . ."). The Order itself seems to acknowledge the uncertainty of the issue by providing an alternative rationale in the event "PPP loans are not 'loans of Federal financial assistance' because the loans are issued by private lenders." Order at 14 (brackets omitted).

As CFA noted in its motion to dismiss briefing, at least one authoritative source, the Congressional Research Service, came to the opposite conclusion of the Court, when it determined

14

that Title IX's scope exempts PPP loans from the definition of "federal financial assistance" because of the exception for "contract[s] of insurance or guaranty." ECF 23 at 14 (citing Cong. Research Serv., LSB10459, Applicability of Federal Civil Rights Laws to Recipients of CARES Act Loans 2 (May 1, 2020), https://crsreports.congress.gov/product/pdf/LSB/LSB10459); ECF 25 at 6 & n.2. CFA would also argue that a number of authorities cited herein and in its initial motion suggest that the Court erred in concluding differently.

*Third*, "an immediate appeal . . . may materially advance the ultimate termination of the litigation." § 1292(b). Indeed, if CFA is successful in its appeal, then Plaintiffs' claims should be dismissed in their entirety. *See supra* note 9.[10]

The Court should also stay these proceedings while CFA petitions for and litigates any appeal. *See Reed v. United Transp. Union*, 633 F. Supp. 1516, 1528 (W.D.N.C. 1986) (imposing stay during interlocutory appeal), *rev'd on other grounds*, 828 F.2d 1066 (4th Cir. 1987), *rev'd*, 488 U.S. 319 (1989). If CFA succeeds in its appeal, staying these proceedings will have avoided as much as possible the likely irreparable harm of lost goodwill from alleged Title IX violations, and will have saved this Court and the parties significant time and expense litigating an action that was groundless from inception. *Cf. Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 520 (W.D.N.C. 1999) ("[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." (citing *Merrill Lynch Pierce, Fenner and Smith v. Bradley*, 765 F.2d 1048, 1055 (4th Cir. 1985))).

---

[10] In its Order, the Court did not reach Plaintiffs' argument that CFA allegedly agreed in its loan application to follow Title IX and the SBA's implementing regulations. Order at 17 n.3. That argument, which the Court described as "weaker," will not sustain Plaintiffs' Title IX claims. *See id.* (citing cases); ECF 25 at 5–7.

# CONCLUSION

"[D]eparting from text undermines the rule of law in the course of statutory interpretation . . . ." *United States v. Rhynes*, 218 F.3d 310, 331 (4th Cir. 2000) (en banc) (Wilkinson, J., dissenting). The only "assistance" that the SBA provided in this case was to execute a contract of guaranty with a lender. Title IX is clear that "federal financial assistance" does not include a "contract of insurance or guaranty." The lender subsequently loaned private funds to CFA. The SBA did not issue the loan, nor did it provide any funds for the loan. The Court nonetheless held that CFA received "federal financial assistance" when it took out the loan. The statutory text says otherwise.

The Court should grant reconsideration and, in turn, grant the motion to dismiss. In the alternative, the Court should amend its order to certify it for interlocutory appeal and stay the proceedings while CFA seeks and pursues any permitted appeal.

This, the 1st day of July 2022.

Respectfully submitted,

CRANFILL SUMNER LLP

*/s/ Patrick M. Mincey*
PATRICK M. MINCEY
N.C. Bar No. 38372
STEPHEN J. BELL
N.C. Bar No. 44211
VINCE EISINGER
N.C. Bar No. 57646
101 N. 3rd Street, Suite 400
Wilmington, NC 28401
Telephone: (910) 777-6000
Facsimile: (910) 777-6111
E-mail: pmincey@cshlaw.com
sbell@cshlaw.com
veisinger@cshlaw.com
*Counsel for Defendant*

## Certificate of Service

I hereby certify that I electronically filed the foregoing **Defendant's Memorandum in Support of Motion for Reconsideration or, in the Alternative, to Amend Order to Certify It for Interlocutory Appeal and to Stay Proceedings** with the Clerk of Court using the CM/ECF system, which will send notifications to each said party addressed as follows:

Gary K. Shipman
James T. Moore
Shipman & Wright, L.L.P.
575 Military Cutoff Road, Suite 106
Wilmington, NC 28405
gshipman@shipmanlaw.com
jmoore@shipmanlaw.com
*Counsel for Plaintiffs*

This, the 1st day of July 2022.

                                            CRANFILL SUMNER LLP

                                            */s/Patrick M. Mincey*
                                            PATRICK M. MINCEY
                                            N.C. Bar No. 38372
                                            *Counsel for Defendant*