IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-169-D

ELIZABETH KARANIK, CHARLOTTE )
KARANIK, by her parents and next friends, )
JOHN KARANIK and KIMBERLY )
KARANIK, and NATALIE PRESSLEY, )
)
                Plaintiffs, )
)
v. )       **ORDER**
)
CAPE FEAR ACADEMY, INC., )
)
                Defendant. )

On June 17, 2022, this court granted in part and denied in part Cape Fear Academy, Inc.'s ("CFA" or "defendant") motion to dismiss plaintiffs' amended complaint [D.E. 30]. See Karanik v. Cape Fear Acad., Inc., No. 7:21-CV-169-D, 2022 WL 2195293 (E.D.N.C. June 17, 2022). On July 1, 2022, CFA moved for reconsideration and, in the alternative, asks the court to certify for interlocutory appeal its June 7, 2022 order, specifically the issue concerning whether a loan received pursuant to the Paycheck Protection Program ("PPP") qualifies as "federal financial assistance" under Title IX, and to stay proceedings in this court pending appeal [D.E. 37, 38]. On July 21, 2022, plaintiffs responded in opposition [D.E. 40]. CFA did not reply [D.E. 42]. As explained below, the court denies CFA's motion for reconsideration, grants CFA's motion to certify the court's June 17, 2022 order for interlocutory appeal, and denies CFA's motion to stay.

I.

The court's June 17, 2022 order was not a final order. Thus, Federal Rule of Civil Procedure 54(b) governs. Rule 54(b) provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of

a judgment adjudicating all the claims and all the parties' rights and liabilities. Fed. R. Civ. P. 54(b). Before a final order is entered, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003); see Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017); Sarvis v. United States, No. 7:11-CR-83-D, 2018 WL 4855206, at *1 (E.D.N.C. Oct. 5, 2018) (unpublished). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," but are "committed to the discretion of the district court." Am. Canoe Ass'n, 326 F.3d at 514–15. The standard for reconsidering a non-final order is less demanding than the standard for reconsidering a final judgment. See, e.g., Carlson, 856 F.3d at 325. A court may revise an interlocutory order if substantially new facts come to light, if the applicable law changes, or if the court determines it made a clear error resulting in a manifest injustice. See id.; Valencell, Inc. v. Apple Inc., No. 5:16-CV-1-D, 2017 WL 2819768, at *1 (E.D.N.C. June 28, 2017) (unpublished).

Relying on the "clear error" prong of the Rule 54(b) analysis, CFA asks the court to reconsider its holding that a PPP loan is "federal financial assistance" under Title IX. CFA argues the court clearly erred by holding that a PPP loan is a "grant or loan of Federal financial assistance" and erred by alternatively holding that a PPP loan is an "arrangement which has as one of its purposes the provision of assistance to any education program or activity." 34 C.F.R. § 106.2(g)(1), (5); see 13 C.F.R. § 113.105.

A.

CFA argues the court erred by concluding that a PPP loan is "[a] grant or loan of Federal financial assistance." 34 C.F.R. § 106.2(g)(1); see [D.E. 38] 5–9. Specifically, CFA contends that a PPP loan cannot be a "grant or loan of Federal financial assistance" because PPP loans are private loans made by private lenders. See [D.E. 38] 5–9. In support, CFA raises several arguments. See

2

id. At bottom, CFA argues a grant or loan is only "federal financial assistance" if it is comprised of "federal funds." Id. And according to CFA, funds are only "federal" if the dollars comprising the loan are disbursed by the federal government directly to the recipient or are disbursed to an intermediary, such as a lender, and then to the recipient (in that order). See id.

CFA's argument does not demonstrate a clear error in the court's reasoning. As the court explained in its June 17, 2022 order, the Small Business Administration ("SBA") typically makes loans by guaranteeing loans made by private lenders rather than directly disbursing funds. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 719 n.3 (1979); Karanik, 2022 WL 2195293, at *6. For PPP loans specifically, Congress provided that "a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to make and approve covered loans." 15 U.S.C. § 636(a)(36)(F)(ii)(I); see Karanik, 2022 WL 2195293, at *7 (same). Thus, not only does the SBA register and guarantee PPP loans, as CFA recognizes, see [D.E. 38] 6, but private lenders make federal PPP loans under the delegated authority of the SBA Administrator. This delegation of authority, rooted in statutory text, is not an "abstract" or "undefined . . . connection[] between the private loans and the federal agency." [D.E. 38] 6. Although CFA accuses the court of "[d]eparting from the text" and thereby "undermin[ing] the rule of law in the course of [its] statutory interpretation," id. at 16 (quotation omitted), CFA completely ignores this statutory delegation of authority by Congress to private lenders—a delegation consistent with the process through which the SBA typically makes section 7(a) loans and on which this court relied in its June 17, 2022 order—and has not even attempted to explain how this statutory provision harmonizes with its arguments.

Instead, CFA argues that a loan is only federal financial assistance if it is made with federal funds that an agency disburses either directly to a recipient or to a lender who then gives the funds to the recipient. Thus, according to CFA, "[t]his case might have been different if SBA had provided federal funds to First Carolina Bank that were then loaned to the CFA, but it did not." [D.E. 38] 6.

3

Of course, the SBA provided federal funds to First Carolina Bank on June 15, 2021, when the SBA forgave CFA's PPP loan. See Karanik, 2022 WL 2195293, at *4; [D.E. 23-2] 6 (loan forgiveness notice stating that "SBA has remitted to the Lender of Record" $1,253,949.00 in principal and $13,932.77 in interest). In CFA's view, a loan may be federal financial assistance if the federal dollars are disbursed to the private lender before the loan is made to the borrower, but if the federal dollars are disbursed after the private lender makes the loan, then the loan is merely a private loan regardless of any subsequent federal involvement. CFA does not adequately explain why the disbursement's timing makes a difference, especially when the private lender initially makes the PPP loan under the statutorily delegated authority of the SBA Administrator. See 15 U.S.C. § 636(a)(36)(F)(ii)(I).

Next, CFA argues that the court overlooked two "structural clues" that support CFA's arguments. [D.E. 38] 6. First, CFA notes that the Department of Education defined "federal financial assistance" in 34 C.F.R. § 106.2(g)(1) in the context of laws it administers and thus the Department "did not have in mind contracts of guaranty" and "certainly not contracts of guaranty extended under a program 'administered' by the SBA." [D.E. 38] 7. However, the SBA has adopted a nearly identical definition of "federal financial assistance" in its own regulations implementing Title IX and defines "federal financial assistance," in part, to be "[a] grant or loan of Federal financial assistance." 13 C.F.R. § 113.105; cf. 20 U.S.C. § 1682. Moreover, the SBA's definition applies to any federal financial assistance "authorized or extended under a law administered by the Federal agency that awards such assistance," which includes PPP loans administered by the SBA. 13 C.F.R. § 113.105. Because the SBA typically loans funds through a deferred participation model, see 13 C.F.R. § 120.2(a)(1); Kimbell Foods, 440 U.S. at 719 n.3, its definition of "federal financial assistance" as "[a] grant or loan of Federal financial assistance" would be meaningless if it never applied to the SBA's primary loan programs. To the extent the court erred in its June 17, 2022 order by not focusing more specifically on the SBA's definition of "federal financial assistance," the court

4

now clarifies that the same analysis applies to the SBA's definition of "federal financial assistance" in 13 C.F.R. § 113.105 as the court applied to the definition of "federal financial assistance" in 34 C.F.R. § 106.2(g)(1). See Karanik, 2022 WL 2195293, at *6–9.

Second, CFA argues that the court's interpretation of 34 C.F.R. § 106.2(g)(1) broadens (g)(1) so that it "overlaps with the meaning added by other subsections" in (g)(2) through (g)(5). If the court had focused on 13 C.F.R. § 113.105 in its June 7, 2022 order, CFA would likely have argued that the court's interpretation had the same effect, given that 13 C.F.R. § 113.105 has the same subsections as 34 C.F.R. § 106.2. Subsection (g)(2) focuses on grants of federal real or personal property, subsection (g)(3) focuses federal personnel providing services, and subsection (g)(4) focuses on the sale or lease of federal property. See 34 C.F.R. § 106.2(g)(2)–(g)(4). Nothing in the court's June 17, 2022 order involves federal personnel or the sale or leasing of federal property. And because the court's order focuses on monetary loans, it is not concerned with "grant[s] of Federal real or personal property," including "the proceeds of the sale or transfer of such property." See id. § 106.2(g)(2). Finally, subsection (g)(5) is a broad catch-all provision. Besides the word "other," which distinguishes (g)(5) from subsections (g)(1) through (g)(4), its broad language would otherwise swallow the subsections preceding it. Thus, it is not surprising that any interpretation of (g)(1) could overlap with (g)(5). CFA's argument does not demonstrate a clear error in the court's analysis, under either 34 C.F.R. § 106.2(g)(1) or 13 C.F.R. § 113.105.

Finally, CFA argues the court misapplied Springfield Hospital, Inc. v. Guzman, 28 F.4th 403 (2d Cir. 2022), and Tradeways, Ltd. v. United States Department of the Treasury, No. Civil Action No. ELH-20-1324, 2020 WL 3447767 (D. Md. June 24, 2020) (unpublished). See [D.E. 38] 8–9. According to CFA, those cases "described the PPP program as one that guarantees private loans." Id. at 9. However, the phrase "private loan" does not appear in the Springfield Hospital decision. Instead, the Second Circuit described how Congress authorized the SBA to loan billions in federal dollars through section 7(a) loans, which are "the SBA's primary mechanism for providing financial

5

assistance to businesses." Springfield Hosp., 28 F.4th at 409, 423. Moreover, instead of reinventing the wheel, Congress structured the PPP "consistent with the SBA's standard loan practices," in which "PPP loans are made through private lenders and participants sign promissory notes, subject to SBA guarantees." Id. at 423 (quotation omitted). CFA conflates Springfield Hospital's discussion of private lenders acting pursuant to federal statutory authorization with private loans. Thus, Springfield Hospital comports with the conclusion that in the PPP, Congress used private lenders to provide federal financial assistance. Cf. 15 U.S.C. § 636(a)(36)(F)(ii)(I). The Tradeways decision is no different. See 2020 WL 3447767, at *17. Accordingly, CFA's arguments do not demonstrate clear error in the court's June 17, 2022 order.

B.

CFA argues the court clearly erred by alternatively holding that the PPP was an "arrangement which has as one of its purposes the provision of assistance to any education program or activity." 34 C.F.R. § 106.2(g)(5); see [D.E. 38] 9–13. Specifically, CFA argues that the court "writes the 'contract . . . of guaranty' exception out of the law." [D.E. 38] 10. According to CFA, under the court's interpretation, the exception for contracts of guaranty would never apply because lenders do not typically run educational programs and because those that operate educational institutions could never qualify for the exception because they are often not parties to contracts of guaranty. See id. at 10–11; but see 34 C.F.R. § 100.5(c) (noting a training grant to a non-academic institution would be subject to Title IX for the selection and treatment of the trainees). Thus, according to CFA, the court should have understood the loan from First Carolina Bank to CFA and the contract of guaranty between the SBA and First Carolina Bank as a single unit existing outside Title IX's reach.

As the court explained in its June 17, 2022 order, First Carolina Bank's contract of guaranty with the SBA was a separate contractual relationship to which CFA was not a party. See Karanik, 2022 WL 2195293, at *8; see also Duke v. Reconstruction Fin. Corp., 209 F.2d 204, 207 (4th Cir. 1954) (examining a contract of guaranty and concluding it "was a separate and distinct contract

6

relation between the guarantors and [the lender] and merely collateral to the loan arrangement between" the lender and the borrower). And that separate contractual relationship was a part of Congress's broader arrangement to provide federal assistance during the COVID-19 pandemic. See Karanik, 2022 WL 2195293, at *8. Borrowers like CFA, not the lenders, were the intended recipients of that federal assistance. See, e.g., NCAA v. Smith, 525 U.S. 459, 468 (1999); Peltier v. Charter Day Sch., Inc., 37 F.4th 104, 127 (2022) (en banc). To the extent an education institution becomes a party to a contract of guaranty, the exception would still apply. Moreover, even if CFA's argument has merit, CFA's reasoning leads to an anomalous conclusion—namely, that a private education institution can skirt federal nondiscrimination law by only receiving federal assistance through loans structured similarly to the PPP and then using the lender's contract of guaranty as legal cover. The statutory text and the structure of the arrangement Congress created in the PPP does not command that result.

CFA has not demonstrated a clear error in the court's June 7, 2022 order. Accordingly, the court denies CFA's motion for reconsideration.

II.

Alternatively, CFA asks the court to certify for interlocutory appeal its June 7, 2022 order, specifically the question of whether PPP borrowers are subject to Title IX. See [D.E. 38] 13–15. "Finality as a condition of review is an historic characteristic of federal appellate practice." Cobbledick v. United States, 309 U.S. 323, 324 (1940). However, a district judge may certify an issue for interlocutory appeal if the judge believes the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). To succeed on a motion under section 1292(b), a movant must show (1) a controlling question of law as to which there is substantial ground for difference of opinion, (2) that the order may materially advance the ultimate termination of the litigation, and (3) "that exceptional circumstances justify a

7

departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (quotation omitted), superseded in part on other grounds by Fed. R. Civ. P. 23(f); see 28 U.S.C. § 1292(b); Hogans v. Charter Commc'ns, Inc., No. 5:20-CV-566-D, 2022 WL 1500859, at *1-2 (E.D.N.C. May 12, 2022) (unpublished); Eshelman v. Puma Biotechnology, Inc., No. 7:16-CV-18-D, 2017 WL 9440363, at *1-2 (E.D.N.C. May 24, 2017) (unpublished); Stillwagon v. Innsbrook Golf & Marina, LLC, No. 2:13-CV-18-D, 2014 WL 5871188, at *9 (E.D.N.C. Nov. 12, 2014) (unpublished). Exceptional circumstances exist when an interlocutory appeal "would avoid protracted and expensive litigation." Fannin v. CSX Transp., Inc., 873 F.2d 1438, 1989 WL 42583, at *2 (4th Cir. 1989) (per curiam) (unpublished table decision) (quotation omitted); see Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc., 317 F.2d 741, 743 (4th Cir. 1963).

"[T]he movant must state 'the precise nature of the controlling question of law involved.'" Stillwagon, 2014 WL 5871188, at *9 (quoting Fannin, 1989 WL 42583, at *2); see Eshelman, 2017 WL 9440363, at *1. A "controlling question of law" well adapted to discretionary interlocutory review is "a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." Fannin, 1989 WL 42583, at *5; see Univ. of Va. Patent Found. v. Gen. Elec. Co., 792 F. Supp. 2d 904, 910 (W.D. Va. 2011). A controlling issue of law must dispose of the litigation no matter how it is resolved, and "a question of law would not be controlling if the litigation would necessarily continue regardless of how that question were decided." Wyeth v. Sandoz, Inc., 703 F. Supp. 2d 508, 525 (E.D.N.C. 2010) (quotation omitted); see Fannin, 873 F.2d at *5. An appeal that would require the appellate court to delve into the facts of the case is not well-suited for interlocutory review. See Feinberg v. T. Rowe Price Grp., Inc., Civil No. JKB-17-0427, 2021 WL 2784614, at *2 (D. Md. July 2, 2021) (unpublished) (stating a controlling question of law usually involves "the meaning of a statutory or constitutional provision, regulation, or common law doctrine, as opposed to a question of law heavily

8

freighted with the necessity for factual assessment" (quotations omitted)); Long v. CPI Sec. Sys., Inc., No. 3:12-cv-396-RJC-DSC, 2013 WL 3761078, at *2 (W.D.N.C. July 16, 2013) (unpublished). Generally, no controlling question of law exists when an appeal "turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004).

A "substantial ground for a difference of opinion must arise out of a genuine doubt as to whether the district court applied the correct legal standard in its order." Wyeth, 703 F. Supp. 2d at 527. A substantial ground for difference of opinion does not occur when a party merely believes that the district court wrongly decided the issue or incorrectly applied the governing legal standard. See Nat'l Interstate Ins. Co. v. Morgan & Sons Weekend Tours, Inc., No. 1:11CV1074, 2016 WL 1228622, at *2 (M.D.N.C. Mar. 28, 2016) (unpublished); Butler v. DirectSAT USA, LLC, 307 F.R.D. 445, 454–55 (D. Md. 2015); McDaniel v. Mehfoud, 708 F. Supp. 754, 756 (E.D. Va. 1989). Merely because two courts may have "appl[ied] the same straightforward legal standard to similar facts and reach[ed] different results . . . does not mean that the standard itself (or the analysis courts must undertake in applying the standard) is in any way unclear." Hall v. Greystar Mgmt. Servs., L.P., 193 F. Supp. 3d 522, 527 (D. Md. 2016). A substantial ground for disagreement may also exist "if there is a novel and difficult issue of first impression . . . ." Adams v. S. Produce Distribs., Inc., No. 7:20-CV-53-FL, 2021 WL 394842, at *3 (E.D.N.C. Feb. 4, 2021) (unpublished) (quotation omitted); see United States ex rel. A1 Procurement, LLC v. Thermcor, Inc., 173 F. Supp. 3d 320, 323 (E.D. Va. 2016).

The issue CFA asks the court to certify for interlocutory appeal—i.e., whether a PPP loan constitutes federal financial assistance that subjects a borrower to Title IX—is a pure question of law. CFA does not challenge the court's determination that plaintiffs stated plausible Title IX student-on-student harassment and retaliation claims. Instead, CFA disputes a narrow, threshold

9

legal issue concerning whether Title IX applies to it because it accepted a PPP loan. Resolving that legal question would not require the Fourth Circuit to delve significantly into the facts of this case. Moreover, the legal issue CFA asks the court to certify for appeal controls all the federal claims in this case. If the court's determination that receiving a PPP loan subjects the borrower to Title IX for the life of the loan is incorrect, then CFA would be entitled to judgment as a matter of law on all of plaintiffs' Title IX claims. Only Elizabeth Karanik's and Charlotte Karanik's state-law breach of contract claims would remain, and the court would likely decline to continue exercising supplemental jurisdiction over those claims. See 28 U.S.C. § 1367; Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349–50 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725–27 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

This legal question is one on which there could be a substantial difference of opinion. "A substantial ground for disagreement may arise if there is a novel and difficult issue of first impression...." Adams, 2021 WL 394842, at *3 (quotation omitted); see Thermcor, 173 F. Supp. 3d at 323. The legal question in this case is relatively novel, and few courts have examined the issue. However, one other court has sufficiently agreed with this court's analysis to deny a motion to dismiss Title IX claims in part based on this court's reasoning. See E.H. v. Valley Christian Acad., No. 2:21-cv-07574-MEMF (GJSx), 2022 WL 2953681, at *6 (C.D. Cal. July 25, 2022) (unpublished). Nonetheless, the issue is relatively novel and remains unsettled, and CFA's arguments concerning the relationship between PPP loans and Title IX are not frivolous.

In short, the legal question of whether receipt of a PPP loan subjects a borrower to Title IX is a "controlling question of law as to which there is substantial ground for difference of opinion," and the court finds "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(b). Accordingly, the court grants CFA's motion to certify an interlocutory appeal. Although the court's discussion has focused on a single legal

10

Case 7:21-cv-00169-D Document 46 Filed 10/31/22 Page 10 of 13

issue, if the Fourth Circuit grants an interlocutory appeal, the Fourth Circuit would "assume[] jurisdiction of the certified order, not merely the controlling issue of law on which certification was granted." EEOC v. Seafarers Int'l Union, 394 F.3d 197, 200 (4th Cir. 2005); see Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 (1996); Smith v. Murphy, 634 F. App'x 914, 915 (4th Cir. 2015) (per curiam) (unpublished). Thus, the court certifies its June 17, 2022 order for interlocutory appeal.

### III.

CFA asks the court to stay proceedings in this case while CFA pursues an interlocutory appeal. See [D.E. 38] 15. "[A]pplication for an [interlocutory] appeal shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). "A stay is not a matter of right, even if irreparable injury might otherwise result . . . ." Virginian Ry. Co. v. United States, 272 U.S. 658, 672 (1926). Instead, a stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Nken v. Holder, 556 U.S. 418, 433 (2009) (cleaned up); see Virginian Ry., 272 U.S. at 672–73. As the moving party, CFA "bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 433–34. Courts examine four factors to determine whether to issue a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987); see Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 141 S. Ct. 2485, 2487 (2021) (per curiam); Nken, 556 U.S. at 434; Sierra Club v. U.S. Army Corps of Eng'rs, 981 F.3d 251, 256 (4th Cir. 2020) (per curiam). The first two factors are the most important, and a minimal showing does not suffice. See Nken, 556 U.S. at 435.

As for likelihood of success on the merits, CFA has not made a "strong showing." Hilton,

11

481 U.S. at 776; see Nken, 556 U.S. at 434. Although there may be a substantial ground for disagreement because of the novelty of one legal issue for purposes of certifying the court's June 17, 2022 order for interlocutory appeal, that is a separate inquiry from whether CFA has made a strong showing that it is likely to succeed on the merits. For the reasons stated in this order and in the court's June 17, 2022 order granting in part and denying in part CFA's motion to dismiss, CFA is unlikely to succeed on the merits. See Karanik, 2022 WL 2195293, at *6–9.

As for irreparable injury, the court finds that this factor weighs against issuing a stay. CFA argues that a stay will help avoid "the likely irreparable harm of lost goodwill from alleged Title IX violations, and will have saved this Court and the parties significant time and expense litigating an action that was groundless from inception." [D.E. 38] 15. CFA asserts that lost goodwill is "likely" in the future, but "showing some possibility of irreparable injury fails to satisfy the second factor." Nken, 556 U.S. at 435 (cleaned up). Moreover, CFA does not assert that it has already lost any goodwill during the nearly year-long pendency of this case—a past loss that might have suggested future injury. As for saving parties significant time and expense, CFA itself is lengthening the road to trial by seeking an interlocutory appeal. Moreover, if the Fourth Circuit certifies an interlocutory appeal and reverses this court's decision that a PPP loan qualifies as federal financial assistance, such a decision would likely not be dispositive of Elizabeth and Charlotte's breach of contract claims, which could still be litigated and will require the parties to engage in discovery. And, if the Fourth Circuit affirms this court's June 17, 2022 order, it will be more efficient if the parties are already prepared to litigate summary judgment or proceed directly to trial.

As for substantial injury to other parties, CFA has failed to show that other parties interested in this proceeding would not be substantially injured if the court issued a stay. CFA does not even cite this prong of the stay analysis (much less cite the controlling test or even one of the relevant Supreme Court decisions), but it appears CFA emphasizes possible time and cost savings to plaintiffs if the court issued a stay. However, if the court issues a stay and CFA's appeal is

12

unsuccessful, the delay caused by a stay could substantially injury plaintiffs' ability to seek redress for their Title IX claims, which this court has already held are plausible. See Karanik, 2022 WL 2195293, at *10–14.

As for where the public interest lies, CFA has made no argument concerning whether the public interest counsels in favor of or against issuance of a stay and has not carried its burden on this factor. See [D.E. 38] 15. Accordingly, because the court finds that all four factors weigh against issuing a stay, the court declines to stay the proceedings while CFA pursues its interlocutory appeal.

IV.

In sum, the court DENIES defendant's motion for reconsideration but GRANTS defendant's motion to certify the court's June 17, 2022 order for interlocutory appeal [D.E. 37]. Pursuant to 28 U.S.C. § 1292(b), the court CERTIFIES its June 17, 2022 order for interlocutory appeal. The court DENIES defendant's motion to stay [D.E. 37].

SO ORDERED. This 31 day of October, 2022.

JAMES C. DEVER III
United States District Judge