IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO.: 7:21-cv-00169-D

| | | |
|---|---|---|
| ELIZABETH KARANIK, CHARLOTTE KARANIK, by her parents and next friends, JOHN KARANIK and wife, KIMBERLY KARANIK, and NATALIE PRESSLEY, | : : : : : | |
| Plaintiffs, | : | **MEMORANDUM IN SUPPORT** |
| vs. | : : | **OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND** |
| CAPE FEAR ACADEMY, INC., | : : | **AMENDED COMPLAINT** |
| Defendant. | : : | |

**NOW COME** the Plaintiffs, by and through undersigned counsel of record, pursuant to Rule 15 of the Federal Rules of Civil Procedure and Local Civil Rules 7.1(e), 7.2, 10.1 and 15.1 for leave to file their second amended complaint in the above-entitled action, as shown in the Second Amended and Restated Complaint attached. Furthermore, Plaintiffs respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Leave to File Second Amended and Restated Complaint.

## STATEMENT OF THE CASE

Plaintiffs filed this action against the Defendant on October 6, 2021. (D.E. 1). On December 3, 2021, Defendant filed two separate Motions to Dismiss (D.E. 16 and 18). On December 27, 2021, Plaintiffs filed an Amended Complaint proceeding under their true names, (D.E. 20), which mooted CFA's initial Rule 12(b)(6) Motion. On January 10, 2022, the Defendant, Cape Fear Academy, Inc. (hereinafter "CFA" or "Defendant"), filed a Motion to Dismiss Plaintiffs' Amended Complaint contending that CFA was not subject

to Title IX because the Paycheck Protection Program ("PPP") loan it received did not constitute "federal financial assistance," and that Plaintiffs have otherwise failed to state claims for relief. (D.E. 23). In its June 17, 2022 Order, the Court granted in part and denied in part CFA's motion to dismiss Plaintiffs' amended complaint. (D.E. 30). Specifically, the Court dismissed Elizabeth Karanik and Charlotte Karanik's four claims of negligent and intentional infliction of emotional distress *without prejudice*. The Court upheld the Plaintiffs' Title IX and breach of contract claims.

Defendant's Answer to the Amended Complaint was then filed on June 30, 2022 (D.E. 35). On July 1, 2022, the Defendant filed a Motion for Reconsideration or, in the Alternative, to Amend the Court's June 17, 2022 Order to Certify it for Interlocutory Appeal. (D.E. 37). On October 31, 2022, the Court denied Defendant's Motion for Reconsideration, but granted Defendant's motion to certify the Court's Order for interlocutory appeal. (D.E. 46). A Scheduling Order was entered on October 20, 2022. (D.E. 45). On November 8, 2022, Defendant filed its notice of appeal, (D.E. 47), and on the following day, filed its Petition for interlocutory appeal with the United States Court of Appeals for the Fourth Circuit. (D.E. 49). Defendant's Petition was granted on November 29, 2022 (D.E. 50), and therefore, Defendant's appeal is presently pending.

Plaintiffs now seek leave from the Court to file a Second Amended Complaint to reallege their intentional inflection of emotional distress claims against CFA and add a negligence claim against CFA based upon the acts and/or conduct of its agents.

## ARGUMENT

This Court has broad discretion in granting leave to amend pleadings. *See Medigen of Kentucky, Inc. v. Public Serv. Comm'n of W. Va.*, 985 F.2d 164, 167 (4th Cir.

1993). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Thus, the Federal Rules strongly favor granting leave to amend. *Id.* at 168. Under Rule 15, a "motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corporation v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (*citing HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001)). In *Foman v. Davis*, 371 U.S. 178 (1962), the Court held that absent undue delay, bad faith, or prejudice to the opposing party, a district court should allow a motion to amend. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. *See also, Ward Electronics Service, Inc., v. First Commercial Bank*, 819 F.2d 496 (4th Cir. 1987) (abuse of discretion to deny leave to amend absent showing of prejudice). In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given." *Foman*, 371 U.S. at 182. As explained by the Fourth Circuit, the *Foman* factors "embody a principle which focuses on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. denied*, 448 U.S. 911 (1980). Absence of prejudice, though not alone determinative, will normally warrant granting leave to amend. *Id.* The discretion to deny leave to amend is limited by the policies favoring resolution of cases on the merits. *See Bohan v. Hudson*, 115 F.R.D.

193 (E.D.N.C. 1987). A motion to amend should generally be allowed unless it would substantially prejudice the opposing party, *Van Dooren v. Van Dooren*, 37 N.C. App. 333, 246 S.E.2d 20, *cert. denied*, 295 N.C. 653, 248 S.E.2d 258 (1978), "for it is the essence of the Rules of Civil Procedure that decisions be had on the merits and not avoided on the basis of mere technicalities." *Mangum v. Surles*, 281 N.C. 91, 99, 187 S.E.2d 697, 702 (1972) (*citing* Moore's Federal Practice § 15.13 (1968)).

A trial court should liberally allow amendment of complaints in keeping with the spirit of the Federal Rules. *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). The rule governing amendment of pleadings is construed liberally to permit amendment so that claims can be adjudicated on the merits. *Intown Properties Management, Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 170 (4th Cir. 2001). Where the opposing party will not be prejudiced, the liberal allowance of amendment of pleadings is a desirable complement to restriction of objections for substance and form. *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865, 871 (4th Cir. 1941).

United States District Courts in North Carolina have likewise shown a strong liberality in allowing amendments under Rule 15(a). For example, in *Medoil Corp. v. Clark*, 753 F. Supp 592, 596 (W.D.N.C. 1990) the District Court for the Western District of North Carolina, Charlotte Division stated:

> Leave should be freely given to allow amendment for the purpose of presenting the real issues of the case, where the moving party has not exercised bad faith and is not acting to delay the disposition of the case, where the opposing party would not be prejudiced, and when unnecessary delay will not result if the Motion to Amend is granted.

*Id.* at 596.

A party may amend his complaint to set up an entirely new cause of action if the motion is otherwise proper. *See e.g. Forbes v. Pillman*, 18 N.C. App. 439, 197 S.E.2d 226 (1973) (claim for breach of contract amended to seek recovery based on *quantum meruit*). The party opposing a proposed amendment must specify the grounds for his objection and satisfy the court that he will be materially prejudiced if the amendment is allowed. *Mauney v. Morris*, 316 N.C. 67, 340 S.E.2d 397 (1986); *Vernon v. Crist*, 291 N.C. 646, 231 S.E.2d 591 (1977). Discretion to deny leave to amend is limited by the principle, embodied in Rule 15(a) that "leave shall be freely given when justice so requires," and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) *citing* Fed.R.Civ.P. 1. A court may not then use its discretion either arbitrarily, or in a way that undermines. *Id.*

In this case, the Plaintiffs' Motion to amend seeks to add factual allegations and corresponding claims against the Defendant CFA arising from the handling of the sexual harassment complaints, investigation, and retaliation in which the Plaintiffs Elizabeth and Charlotte were forced to endure. Importantly, Plaintiffs alleged a claim for intentional infliction of emotional distress (IIED), which the Court dismissed *without* prejudice in its Order on Defendant's motion to dismiss. (D.E. 30). Accordingly, for purposes of this motion, Plaintiffs simply seek to re-allege their IIED claim against CFA. Additionally, Plaintiffs seek to add a claim for negligence against CFA based on its failure to take action reasonable under the circumstances to prevent Plaintiffs' injuries.

It is without dispute that Defendant CFA, through its agents and/or employees, was in a position of authority and was involved in the supervision, administration and implementation of CFA's policies and procedures not only with respect to any sexual

harassment complaints and discrimination, but also the policies and procedures relating to administering and conducting disciplinary hearings before the Honor Council and the policies and procedures relating to CFA's decision to terminate a student's enrollment contract. The actions and/or conduct of CFA's agents and/or employees, which is imputed to CFA, in failing to adequately address the complaints of sexual harassment and their intentional and reckless retaliatory conduct towards both Elizabeth and Charlotte, as alleged in more detail in Plaintiffs' Second Amended Complaint, form the basis of the Plaintiffs' intentional infliction of emotional distress claims. As a result of both CFA and its agents and/or employees failure to adequately address the sexual harassment complaints, their failure to adequately supervise, administer and implement CFA's own policies and procedures, and instead retaliate against the Plaintiffs for their actions, it is without dispute that each of the Plaintiffs were damaged, both monetarily and emotionally, including additional anxiety, depression and mental health treatment, which is directly related to both CFA and its agents/employees' conduct. With respect to the negligence claim against CFA, the allegations surround CFA's failure, through its agents, servants, and employees, to act reasonably and adequately in its investigation of the complaints made by the students, its failure to protect and prevent further harassment towards Elizabeth and by failing to act reasonably in the advice and recommendations, and representations made to Plaintiffs. Accordingly, as expressed in more detail below and in Plaintiffs' Second Amended and Restated Complaint, these actions by CFA and its agents, servants and employees are sufficient to re-allege an IIED claim on behalf of the Plaintiffs, Elizabeth and Charlotte Karanik, and a negligence claim against CFA.

### A. PLAINTIFFS' MOTION TO AMEND IS NOT A PRODUCT OF UNDUE DELAY.

In deciding if there was undue delay, the trial court may consider the relative timing of the proposed amendment in relation to the progress of the lawsuit. *Draughon v. Harnett Cnty. Bd. of Educ.*, 166 N.C. App. 464, 467, 602 S.E.2d 721, 724 (2004). Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) *citing 6 Wright and Miller*, Federal Practice & Procedure: Civil s 1488, at 438. Motions to amend that are filed near the time of trial are generally disfavored and require special scrutiny. *See Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987).

With respect to Plaintiffs' Motion to Amend, this case is still in the early stages of litigation. First, the Court did not rule upon the Defendant's Motion to Dismiss until June 17, 2022 (D.E. 30). In turn, the Defendant's Answer was filed on June 30, 2022 (D.E. 35). On July 1, 2022, the Defendant filed its Motion for Reconsideration or, in the Alternative, to Amend the Court's June 17, 2022 Order to Certify it for Interlocutory Appeal. (D.E. 37). The Court ruled on that motion on October 31, 2022. (D.E. 46). A Scheduling Order was then entered on October 20, 2022. (D.E. 45). On November 8, 2022, the Defendant filed its Notice of Appeal, (D.E. 47), and on the following day, filed its Petition for interlocutory appeal (D.E. 49).

Although discovery has been exchanged between the parties, Defendant has not yet answered the discovery propounded upon it, and in fact, requested a 30-day extension of Defendant's deadline to respond, which Plaintiffs consented to. Pursuant to the 26(f)

report (D.E. 41) and scheduling order, the deadline to amend the pleadings is February 3, 2023. Importantly, the scheduling order further provides that "[a]ny such motion *filed after* February 3, 2023, must meet the standards of Fed. R. Civ. P. 15 and 16." Clearly, Plaintiffs are within the deadline agreed upon by the parties to amend their complaint. For this reason alone, Defendant is unable to show that there has been an undue delay by Plaintiffs. *See McIntyre v. Nelson*, No. CV 3:05-3012-CMC-BM, 2006 WL 8444668, at *1 (D.S.C. Feb. 23, 2006) (A scheduling order was entered on November 21, 2005 which provided, <u>inter alia</u>, that amended pleadings were due by January 17, 2006. Plaintiffs filed their motion to amend on December 30, 2005; therefore, there was certainly no undue delay on the part of the Plaintiffs).

Additionally, all discovery is to be completed by October 6, 2023, more than eight (8) months from the date of Plaintiffs' Motion to Amend; dispositive motions are to be filed by November 3, 2023 (more than nine (9) months from the Plaintiffs' motion); and there is no scheduled trial date at this point in the litigation. Given the motions practice and briefing that has ensued between the parties since the filing of this lawsuit, the substantial amount of time left for discovery to be completed and for the trial of this matter to commence, the Defendant is unable to establish an undue delay on the part of the Plaintiffs.

### B. THE DEFENDANT WILL NOT SUFFER UNDUE PREJUDICE.

Undue prejudice generally occurs only when the Movant requests leave to amend shortly before trial. *See Taylor v. Florida State Fair Auth.*, 875 F. Supp. 812, 815 (M.D. Fla. 1995). Absence of prejudice, though not alone determinative, will normally warrant granting leave to amend. *See Wall v. Chesapeake & Ohio Railway*, 339 F.2d 434 (4th Cir.

1964). A prejudicial amendment … is one that raises a new theory requiring the gathering and analysis of facts not already considered, and is offered shortly before or during trial. *Foman*, 371 U.S. at 182, 83 S.Ct. 227. In interpreting Rule 15(a) and *Foman,* the courts have generally predicated denial of a late motion to amend upon prejudice to the opposing party. *Davis,* 615 F.2d at 617; *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1520 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984). *See* Wright and Miller, *Federal Practice and Procedure* § 1487 (1971). Conversely, a court will allow an amendment, in most cases, where prejudice is absent. *Davis,* 615 F.2d at 617. This Court has recently discussed what constitutes a prejudicial amendment:

> Under Rule 15(a)(2), prejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position. Thus, undue prejudice may justify denying a motion to amend if the amendment would require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, or would significantly delay the resolution of the dispute. A change in the theory of recovery may obviously sometimes cause substantial prejudice to a defendant, justifying denial of a motion to amend to assert that theory. An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery [h]as occurred.

*Hatteras/Cabo Yachts, LLC v. M/Y Epic*, No. 4:17-CV-00025-BR, 2020 WL 1668045, 2020 U.S. Dist. LEXIS 59044, at 9-10 (E.D.N.C. Apr. 3, 2020) (internal quotation marks, brackets, and citations omitted). Furthermore, in *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006), the court made clear that "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing[,]" but that "[d]elay alone … is an insufficient reason to deny [a] motion to amend "

"Prejudice to the nonmovant is greater when a tardy motion to amend will necessitate the re-opening of discovery." *Burns v. AAF–McQuay, Inc.*, 980 F.Supp. 175, 178 (W.D.Va., 1997) (citing *Block v. First Blood Associates,* 988 F.2d 344 (2nd Cir.1993); *Assam v. Deer Park Spring Water, Inc.,* 163 F.R.D. 400 (E.D.N.Y.1995); *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463 (D.N.J.1990)).

As provided above, the parties have more than eight months before discovery in this litigation closes. Accordingly, this motion will not necessitate the re-opening of discovery to establish prejudice to the Defendant. Furthermore, given the deadline for filing dispositive motions is November 3, 2023, it is anticipated that the trial of this matter will not commence until December, 2023 or later under the terms of the scheduling order. In turn, there will not be any delay, much less a significant delay, in the resolution of the dispute. Clearly, the parties will have ample opportunity to address the issues raised in the proposed Second Amended Complaint during the discovery process, which is not scheduled to be completed until October, 2023. For these reasons, the Defendant is not prejudiced (unfairly or otherwise) by the seeking of this amendment as substantial discovery has not occurred. Here, from the onset, Defendant has been made aware of the actions/conduct giving rise to this action, especially as it relates to the intentional infliction of emotional distress claims given it was alleged in Plaintiffs' initial complaint and First Amended Complaint, and in no way would the amendment prejudice or hinder the preparation of the Defendant's case. The same is true with respect to the negligence claim Plaintiffs seek to allege in their second amended complaint. Even assuming this is a "new theory" of liability on the part of the Defendant, the Defendant

still has ample opportunity to seek all necessary discovery or measures to support its position or defense up until October, 2023. Next, the Defendant will not be required to expend additional resources to conduct discovery and prepare for trial given that the actions and/or conduct giving rise to these claims relate to the factual allegations already alleged by the Plaintiffs. Accordingly, as there is no prejudice to the Defendants associated with the Plaintiffs' Motion to Amend, "justice so requires" that this Court should "freely allow" the proposed Second Amended Complaint. Importantly, in their amended complaint, the Plaintiffs alleged a negligence theory of liability on the part of the Defendant; however, it was alleged as a claim for negligent infliction of emotional distress as opposed to a common law negligence claim now asserted by Plaintiffs *in the alternative*.

### C. THE AMENDED COMPLAINT IS NOT FUTILE.

Leave to amend should be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)(citations omitted). The review for futility, however, "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations ... conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.' " *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d, 606, 613 (4th Cir. 1980)). As such, "[i]t is often a better exercise of the court's discretion ... and a conservation of judicial resources, to leave decisions on the merits with respect to motions to amend until the

matter has been fully briefed in a motion to dismiss. *DirecTV, Inc. v. Benson*, 333 F. Supp. 2d 440, 444 (M.D.N.C. 2004) (citation omitted).

First, it is without dispute that both the intentional infliction of emotional distress claim and negligence claim are brought well within the applicable statute of limitations for actions of this type in North Carolina. The applicable statute of limitations for intentional infliction of emotional distress and negligence is three years. N.C. Gen. Stat. § 1-52(5).

Next, the ability of the case to survive dismissal is not at issue. *See* Motion to Dismiss Order [D.E. 30] (Denying Defendant's Motion to Dismiss with respect to Plaintiffs' claims under Title IX and breach of contract claims). The claims that Plaintiffs seek to add are also not frivolous. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510-11 (4th Cir. 1986) (holding an additional claim is not frivolous when it is not obvious that the claim would be barred substantively or procedurally). Here, it is not obvious on the face of the proposed amendment that the Plaintiffs fail to have claims for intentional infliction of emotional distress or negligence. The legal basis for the additional claims is well-established.

Under North Carolina law, intentional infliction of emotional distress consists of the following elements: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). A claim may also lie where the defendant's actions show "a reckless indifference to the likelihood that they will cause severe emotional distress." *Id.*

Extreme and outrageous conduct exists "when a defendant's conduct exceeds all bounds usually tolerated by decent society ...." *Watson v. Dixon*, 130 N.C. App. 47, 52–53, 502 S.E.2d 15, 19–20 (1998), <u>aff'd</u>, 352 N.C. 343, 532 S.E.2d 175 (2000) (internal citations omitted) (The defendant engaged in extreme and outrageous conduct when he "frightened and humiliated [plaintiff] with cruel practical jokes, which escalated to obscene comments and behavior of a sexual nature, ... finally culminating in veiled threats to her personal safety."). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985). The standard for determining whether conduct is extreme or outrageous is well settled in this jurisdiction.

> It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery.... However, once conduct is shown which may be reasonably regarded as extreme and outrageous, it is for the jury to determine, upon proper instructions, whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability.

*Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 436, 378 S.E.2d 232, 235 (1989), review dismissed, 326 N.C. 356, 388 S.E.2d 769 (1990) (quoting *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. at 491, 340 S.E.2d at 121).

The Fourth Circuit, in reversing the dismissal of an intentional infliction of emotional distress claim, has held that outrageous conduct "is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (citations omitted). In *Baird*, the plaintiff contended that defendant's conduct was sufficiently

outrageous to survive a motion to dismiss under Rule 12(b)(6) because the [defendant school official] abused her position and because the school official had reason to know that plaintiff was particularly susceptible. *Id.* The court relied upon the *Restatement (Second) of Torts § 46*, cmts. E, f (1965) to stand for the proposition that " 'the extreme and outrageous character of the conduct may arise from an abuse by the actor of a position ... which gives him actual ... authority over the other" and that "conduct may become heartless, flagrant, and outrageous when the actor proceeds in the fact of ... knowledge' of special susceptibility." *Id.* Accordingly, based upon the plaintiff's allegations that the school official, in her capacity as plaintiff's teacher and during a class to which plaintiff was assigned—intentionally attempted to humiliate plaintiff knowing that she was suffering from clinical depression, the court determined that it could not say, as a matter of law, that the allegations in plaintiff's complaint did not allege facts so outrageous as to exceed the bounds of decent society, and therefore reversed the decision by the district court dismissing plaintiff's claim for intentional infliction of emotional distress. *Id.* at 473.

It is without dispute that CFA may also be held liable for the actions of its agents. *See, e.g.*, *Meyer v. Holley*, 537 U.S. 280, 285, 123 S. Ct. 824, 829, 154 L. Ed. 2d 753 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."); *Norburn v. Mackie*, 262 N.C. 16, 24, 136 S.E.2d 279, 285 (1964) (holding that "a principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends, although the

agent does not in fact inform his principal thereof"); *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 331-32, 780 A.2d 410, 439 (2001) ("[W]here the relationship is that of master/servant, the master is answerable for the tort of the servant committed while acting in the scope of his employment.").

Here, the conduct of CFA and its agents rise to a level much higher than simply bad manners and hurt feelings with respect to the Plaintiffs in this case. Next, this is not a case in which Plaintiffs seek liability against the Defendant for mere insults, indignities, and threats. *See Wagoner v. Elkin Cnty. Schs.' Bd. of Educ.*, 113 N.C. App. 579, 440 S.E.2d 119 (1994). As alleged in Plaintiffs' Second Amended and Restated Complaint, the Plaintiffs seek liability against the Defendant for the ongoing emotional distress each of them still suffer today due to the conduct and actions of the Defendant. Defendant's agents, servants and employees utilized and abused their position of power by humiliating and ostracizing Elizabeth not only by mandating that she not attend her own graduation ceremony and salute to seniors, but also by wiping out any thoughts or mention of her as it related to graduation, and the CFA community as a whole. Elizabeth attended CFA for four (4) years. CFA, through its agents, servants and employees, knew of the anxiety and depression Elizabeth struggled with every single day and knew of the emotional susceptibility of Elizabeth.

With that knowledge in mind, CFA, through its agents, servants and employees, specifically targeted Elizabeth after the petition was posted, despite more than twenty-seven (27) CFA students having signed the petition. First, Elizabeth was harassed and threatened in an effort to force her to disclose other students involved in the petition. Given CFA and its agents dissatisfaction with that outcome, they then continued the

harassment, intimidation and retaliation of Elizabeth by bringing her before the Honor Council for an alleged "major infraction," which concluded with the Honor Council's determination that no action should be taken against Elizabeth. Again dissatisfied, CFA and its agents mandated that Elizabeth provide a written apology to the male students, which Elizabeth respectively declined. Given Elizabeth's failure to once again abide by their mandate, CFA and its agents excluded Elizabeth from CFA's commencement exercises even though CFA had no policy to allow such disciplinary action. Elizabeth was further shut out of her student email and erased from all graduation/commencement programs.

Given CFA and its agents' belief that still was not enough, CFA and its agents made the unilateral decision to terminate the enrollment contract of her younger sister, Charlotte, as further humiliation, embarrassment, retaliation and vindictive conduct towards Elizabeth. The termination of Charlotte's enrollment contract was further abuse of CFA and its agents' position of power within CFA for the purpose of humiliating, embarrassing, ostracizing and retaliating against both Elizabeth and Charlotte for their unwillingness to simply agree with CFA and its agents, servants and employees. CFA and its agents, servants and employees participated in this continued retaliation against the Plaintiffs all the while knowing that they both suffered and were susceptible to anxiety and depression, and also understanding Plaintiffs' expected reaction to the continued treatment and retaliation. Other jurisdictions have found this conduct alone sufficient to state a claim for intentional infliction of emotion distress. *See Arsham v. Mayor & City Council of Baltimore*, 85 F. Supp. 3d 841, 849 (D. Md. 2015) (allowing IIED claim to survive dismissal based on allegation that defendant employer continued

to engage in discriminatory, retaliatory, and hostile behavior toward plaintiff despite knowledge of plaintiff's "expected reaction to wrongful treatment").

In addition to the allegations outlined above, the Plaintiffs have alleged that CFA wrongfully and publicly suggested that both Elizabeth and Charlotte were in the wrong for their actions by erasing them and exiling them from CFA, and knowing that they both were emotionally vulnerable and were suffering as a result of the retaliation in which CFA and its agents, servants and employees participated in. Plaintiffs' have alleged that a basis for this was so CFA could permanently rid itself of the students complaining about CFA's response to allegations of student-on-student sexual harassment. Given the humiliation, embarrassment, mockery, ridicule, discrimination and retaliation that both Elizabeth and Charlotte suffered, as expected, it caused a chilling effect and deterred other students from making or supporting any of these issues being brought to the attention and complained of by other students.

CFA and its agents knew their conduct and/or actions would, and did in fact, cause severe emotional distress to Plaintiffs, especially given their present medical condition at the time. Furthermore, their actions were designed to draw attention to Plaintiffs' actions and to send a message that the administration at CFA, and CFA as a whole, is not to be questioned.

In North Carolina, similar allegations have been sufficient to state a claim for intentional infliction of emotional distress. *See Rouse v. Duke University*, 869 F.Supp.2d 674, 681 (M..D.N.C. 2012). In *Rouse*, plaintiff alleged that after Duke wrongfully and publicly suggested that she was to blame for being raped, and knowing that Ms. Rouse

was emotionally vulnerable and was suffering as a result of the difficult campus environment which Duke itself created, Duke purposefully "duped" her into withdrawing from school and treated a request for temporary leave as a mechanism to permanently rid themselves of a student complaining about the University's response to her rape. *Id.* As a result, plaintiff alleged that she suffered severe emotional distress. *Id.* Viewing the plaintiff's claim in its entirety, the court held that she had stated a claim for intentional infliction of emotional distress against the defendant. *Id.*

Here, with respect to the outcome, it was much harsher than *Rouse*. Instead of "duping" Elizabeth and Charlotte from withdrawing from CFA, CFA simply erased Elizabeth from any affiliation with the school and immediately terminated Charlotte's enrollment contract. Clearly, these actions were extreme and outrageous. No one in a civilized society should be expected to take the kind of humiliation, embarrassment, isolation, mockery, ridicule, ostracizing and retaliation these high school students had to endure simply because of their unwillingness to abide by and acquiesce to CFA's tyranny. Next, Plaintiffs have alleged an alternative negligence claim on the part of CFA based on the actions of its agents and employees. As discussed above, CFA may be held liable for the actions of its agents and employees. Here, CFA's agents and employees failed to abide by their duty owed to Plaintiffs and CFA is liable under the theory of *respondeat superior*.

North Carolina imposes upon every person a positive duty to exercise ordinary care to protect others from harm; this duty of ordinary care requires that individuals act reasonably in any given situation and to take steps to prevent harm that is reasonably foreseeable. *Fussell v. N. Carolina Farm Bureau Mut. Ins. Co.*, 695 S.E.2d 437, 440

(2010). This same standard of care has been imputed to both schools and teachers in this state. *See Doe v. United States*, 381 F. Supp. 3d 573, 594 (M.D.N.C. 2019).

Applying the holdings in *Fussell,* the leading North Carolina case on the question of negligence, Plaintiffs' negligence claim also passes the futility test as "[i]t is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected. Usually the question of foreseeability is one for the jury." *Fussell* at 440. The Court in *Fussell* went on to say that trial courts "should not grant a motion to dismiss unless it is certain that the plaintiff could prove no set of facts that would entitle him or her to relief." *Fussell* at 440 - 441.

In assessing if Plaintiffs' have alleged any set of facts that would entitle them to relief, it is helpful to look at *Doe v. United States* decided by The United States District Court for the Middle District of North Carolina. There the court found that the plaintiff had plausibly alleged a negligence action after the school operated by the DoD failed to take seriously the plaintiff's complaints of sexual assault, the plaintiff's change in behavior, and knowledge the school had of prior instances.

Here, CFA failed to account for the actions of certain male students that occurred openly and in the presence of faculty and staff; CFA failed to take seriously the accusations brought forward by Elizabeth and other female students to their guidance counselor Tobi Ragon; CFA failed to take seriously the accusations brought forward by Elizabeth and other female students to their dean Jamison Fee; and CFA failed to take any action to prevent further harm from coming to Elizabeth and other female students.

In sum, Plaintiffs should not be precluded from litigating a meritorious claim. The Motion here should be allowed because: this case is in its early stages, the requested amendment will not be prejudicial in any significant way and is not futile.

## CONCLUSION

For the reasons set forth herein, the Plaintiffs respectfully requests that the Court grant Plaintiffs' Motion for Leave to File a Second Amended Complaint in the form attached hereto as Exhibit A, and for such other and further relief as the Court deems just and proper.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.2(f)(2), the undersigned certifies that this memorandum in support of motion for leave to file second amended complaint complies with the applicable word limit. According to Microsoft Word, the memorandum in support contains 5754 words.

Respectfully submitted this the 26th day of January, 2023.

SHIPMAN & WRIGHT, L.L.P.
*Attorneys for Plaintiffs*

By:     s/ *Gary K. Shipman*
        **GARY K. SHIPMAN**
        N.C. State Bar No.: 9464
        **JAMES T. MOORE**
        N.C. State Bar No.: 38377
        **THOMAS R HARVEY III**
        N.C. State Bar No.: 57308
        575 Military Cutoff Road, Suite 106
        Wilmington, NC 28405
        Telephone: (910) 762-1990
        Facsimile: (910) 762-6752
        Email: gshipman@shipmanlaw.com
        Email: jmoore@shipmanlaw.com
        Email: tharvey@shipmanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 26th day of January, 2023, I electronically filed the foregoing *MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED AND RESTATED COMPLAINT* with the Clerk of the Court using CM/ECF system, which will automatically send notification of such filing to the following CM/ECF participants:

> Stephen J. Bell
> Patrick M. Mincey
> Vince Eisinger
> CRANFILL SUMNER, LLP
> 101 N. 3rd Street, Suite 400
> Wilmington, NC 28401
> Email: sbell@cshlaw.com
> Email: pmincey@cshlaw.com
> Email: veisinger@cshlaw.com
>
> *Attorneys for Defendant*

This the 26th day of January, 2023.

SHIPMAN & WRIGHT, L.L.P.
*Attorneys for Plaintiffs*

By:   s/ *Gary K. Shipman*
**GARY K. SHIPMAN**
N.C. State Bar No.: 9464
**JAMES T. MOORE**
N.C. State Bar No.: 38377
**THOMAS R HARVEY III**
N.C. State Bar No.: 57308
575 Military Cutoff Road, Suite 106
Wilmington, NC 28405
Telephone: (910) 762-1990
Facsimile: (910) 762-6752
Email: gshipman@shipmanlaw.com
Email: jmoore@shipmanlaw.com
Email: tharvey@shipmanlaw.com